ROSENCRANS *v.* UNITED STATES.

ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE
DISTRICT OF MONTANA.

No. 522.   Submitted January 11, 1897. — Decided February 1, 1897.

Under the act of July 20, 1892, c. 208, the grand jury in the southern division of the District of Montana had jurisdiction to find the indictment which forms the subject of discussion in this case; and, after such indictment had been found, the court had authority to remit it to the other division for trial.

Where Congress has expressly legislated in respect to a given matter, that express legislation must control, in the absence of subsequent legislation equally express, and is not overthrown by any mere inferences or implications to be found in such subsequent legislation.

The indictment of a person employed in the postal service for secreting, embezzling or destroying a cheque or draft in a letter delivered to him as such agent need not give a full description of the cheque or draft; but it is sufficient to say that, the instrument having been destroyed, the grand jury is unable to give any further description than is found in the indictment.

THE act of February 22, 1889, c. 180, 25 Stat. 676, 682, admitting Montana into the Union, provided that the State should constitute one judicial district, and that the sessions of the Circuit and District Courts of the United States should be held at Helena, in Lewis and Clarke County, that being the capital of the State.   On July 20, 1892, the following act (c. 208) was passed, 27 Stat. 252:

"That the territory embraced within the following counties in the District of Montana, to wit: Beaverhead County, Madison County and the county of Silver Bow shall hereafter constitute and be known as the southern division of the District of Montana, and regular terms of the Circuit and District Courts of the United States for said district may be held at Butte City, Montana, on the first Tuesday in February and the first Tuesday in September of each year; and the said courts so sitting at Butte shall have and exercise the same jurisdiction and authority in all civil actions, pleas or pro-

ceedings, and in all prosecutions, informations, indictments, or other criminal or penal proceedings conferred by the general laws on the District and Circuit Courts of the United States ; and where one or more defendants in any civil cause shall reside in said division, and one or more defendants to such cause shall reside out of said division, but in said district, then the plaintiff may institute his action either in the court having jurisdiction over the latter or in the said division. That this act shall not affect the jurisdiction, power and authority of the court as to actions, prosecutions and proceedings already begun and pending in said district, but the same will proceed as though this act had not been passed, except that the court shall have power, which it may exercise at discretion, to transfer to the court in said division such of said pending actions, prosecutions and proceedings as might properly be begun therein under the provisions of this act."

On March 18, 1895, an indictment in five counts was presented in the Circuit Court, charging the defendant with violating section 5467 of the Revised Statutes, which reads :

"Any person employed in any department of the postal service who shall secrete, embezzle or destroy any letter, packet, bag or mail of letters intrusted to him, or which shall come into his possession, and which was intended to be conveyed by mail, or carried or delivered by any mail carrier, mail messenger, route agent, letter carrier, or other person employed in any department of the postal service, . . . and which shall contain any . . . draft, cheque, warrant, . . . or any other article of value, or writing representing the same, . . . shall be punishable by imprisonment at hard labor for not less than one year nor more than five years."

The fourth count, upon which alone the defendant was found guilty, charged that on the 13th day of July, 1894, "in the State and District of Montana and within the jurisdiction of this court," the defendant, "a person employed in the postal service of the United States, to wit, a railway postal clerk, . . . and in the discharge of the duties of that position on the Great Northern Railway, between the station of

Havre, in the county of Choteau, and the station of Kalispell, in the county of Flathead, in said State of Montana," did destroy a registered letter and the contents thereof, which letter had "come into his possession as such railway postal clerk, and which was intended to be and was then and there being conveyed by United States mail, and which said registered letter had been deposited in the mail at the United States post office at Sacramento," directed to "Mrs. Emilie Heistans Greitzer, Gasthaus etzel b. Einsedeln Ct. Schwizz, Schweizerland, which said registered letter contained a draft for fifty francs, D. O. Mills & Co., No. d.08250, on Paris, France (a more particular description of which is to the grand jurors aforesaid unknown)."

The term of the Circuit Court for the District of Montana, at which the grand jury was empanelled and at which this indictment was presented, was held at the city of Butte, in the southern division of the district. Thereafter, the defendant having been arrested, on motion of the United States District Attorney, the indictment was remitted for trial to the term of court to be held at Helena, in Lewis and Clarke County, in the other division of the district. No objections to this transfer were made by the defendant. Trial being had, the jury found the defendant guilty, as heretofore stated, under the fourth count. A motion in arrest, in which for the first time the question of jurisdiction was raised, having been made and overruled, the defendant was sentenced to imprisonment for the term of one year; whereupon this writ of error was sued out.

*Mr. Thomas H. Carter* and *Mr. S. S. Burdett* for plaintiff in error.

*Mr. Solicitor General* for defendants in error.

MR. JUSTICE BREWER, after stating the case, delivered the opinion of the court.

Counsel for defendant state that the main question for determination is one of jurisdiction: First, of the grand jury

in the southern division of the District of Montana to find the indictment; and, second, whether such indictment, having been found, the court had authority to remit it to the other division for trial.

It is insisted that the Circuit Court for the southern division had jurisdiction under the act of 1892 of only such offences as were committed within the limits of the division; that therefore the grand jury had no authority to find an indictment for an offence such as this, apparently committed in the other division. The solution of this question depends upon the construction to be given to the act of 1892. By § 563, Rev. Stat., the District Courts are given jurisdiction " of all crimes and offences cognizable under the authority of the United States, committed within their respective districts." By § 629, par. 20, the Circuit Courts have "concurrent jurisdiction with the District Courts of crimes and offences cognizable therein."

These statutes declare the general rule, that jurisdiction is coextensive with district. That being the general rule, no mere multiplication of places at which courts are to be held or mere creation of divisions nullifies it. Indeed, the place of trial has no necessary connection with the matter of territorial jurisdiction. By § 581, Rev. Stat., it is provided that "a special term of any District Court may be held at the same place where any regular term is held, or at such other place in the district as the nature of the business may require." And by § 729, that "the trial of offences punishable with death shall be had in the county where the offence was committed, where it can be done without great inconvenience." Jurisdiction in the trial courts being thus bounded by district, we find many acts, some increasing in a district the places of trial, and others in terms subdividing the district into divisions. The former have no effect on the matter of jurisdiction. Some of these latter acts specifically limit the jurisdiction in criminal actions of the courts held in a division to the territory within that division; as, for instance, in respect to Alabama act of May 2, 1884, c. 38, 23 Stat. 18, Louisiana act of August 8, 1888, c. 789, 25 Stat. 388, Michigan

act of June 19, 1878, c. 326, 20 Stat. 175, Ohio act of June 8, 1878, c. 169, 20 Stat. 101; act of February 4, 1880, c. 18, 21 Stat. 63, Tennessee act of June 11, 1880, c. 203, 21 Stat. 175, Texas act of March 1, 1889, c. 333, 25 Stat. 783, 786; while, on the other hand, some contain no such provision, as in the case of Minnesota, act of April 26, 1890, c. 167, 26 Stat. 72, *Post* v. *United States*, 161 U. S. 583, 585, though this was changed by the subsequent act of July 12, 1894, c. 132, 28 Stat. 102; *Post* v. *United States*, 161 U. S. 583.

In the light of this legislation, with its diversity of provision, we are called upon to construe the act of 1892, creating the southern division of the District of Montana. The first part of the section simply creates the division and defines its limits. This is followed by the general declaration that the courts so sitting in Butte, the place at the southern division in which they are to be held, "shall have and exercise the same jurisdiction and authority in all civil actions, pleas or proceedings, and in all prosecutions, informations, indictments or other criminal or penal proceedings conferred by the general laws upon the Circuit and District Courts of the United States." If the section stopped here there would be no question. The mere creation of a division does not disturb the general jurisdiction over the district. And, in addition, the language just quoted makes an affirmative grant to the courts when sitting at Butte, of all the jurisdiction, civil and criminal, vested in the Circuit and District Courts; that is, a jurisdiction coextensive with the district. The latter part of the section causes all the doubt in respect to the matter. In that are found two provisions, one that, where one or more of the defendants in any civil cause reside in one division and one or more in another, the plaintiff may institute his action in either division. This of course has no bearing on the question of jurisdiction in criminal cases. The second, that the act should not affect the jurisdiction of the court as to actions, prosecutions and proceedings already begun; that they should proceed where they were commenced, with a proviso that the court might in its discretion transfer all such actions, etc., as might properly be begun in the new division to the court in that division.

This language is broad enough to include criminal actions.. Too much stress should not be placed on the word " properly." The creation of divisions and the multiplication of places of trial are for the convenience of litigants, bringing the trial nearer to them and their witnesses. There is a manifest propriety, even when no jurisdictional necessity, in conducting criminal prosecutions as near to the place of the offence as possible. The idea of the vicinage is familiar to criminal law. And all that Congress may have intended by this second provision was to make it clear that the court should have the power to transfer to this new division any pending proceeding which might with more convenience and therefore propriety be prosecuted at the place at which in the new division the sessions of the court were to be held. It must, however, be conceded that these provisions do carry some implication that a distribution has been made of territorial jurisdiction between the courts of the two divisions, and the question we have to determine is whether this implication is sufficient to create a distribution which the statute has not in terms made. It may be said, and with force, that there is no need of the last half of the section; that it is superfluous, unless upon the assumption that there has been a distribution of jurisdiction, civil or criminal or both, coextensive with the territories of the two divisions, and yet can it be adjudged that Congress has created such distribution when it has not in terms directed it, simply because some expressions in the statute imply its existence? The question is a difficult one, and yet we think the true rule of construction is this: When there are statutes clearly defining the jurisdiction of the courts the force and effect of such provisions should not be disturbed by a mere implication flowing from subsequent legislation. In other words, where Congress has expressly legislated in respect to a given matter that express legislation must control, in the absence of subsequent legislation equally express, and is not overthrown by any mere inferences or implications to be found in such subsequent legislation. Especially is this rule to control when it appears that Congress in some cases has made express provision for effecting a

change. This does not conflict with the doctrine stated in *In re Bonner*, 151 U. S. 242, 256, that the jurisdiction of a court in criminal cases cannot "be enlarged by any mere inferences from the law or doubtful construction of its terms." It is rather the converse of that, for the effort is to destroy a jurisdiction otherwise clearly existing, by mere inferences and doubtful construction.

This may be a case of mere omission, but it is an omission which the courts cannot supply. We cannot assume that because Congress in creating some divisions distributed jurisdiction it meant, in creating other divisions, to also so distribute it, and when we find that in some cases of division it distributed the jurisdiction and in other cases not, we are not justified in assuming that in this case it intended a distribution which it did not in terms make simply because of the use of language which somewhat implies that a distribution had already been made.

So far as the mere transfer of the place of trial from one division to another, it would seem, in the absence of express prohibition, to be within the competency of the court having full jurisdiction over the entire district, and certainly presents no ground of error when it is not at the time challenged, and the trial proceeds without objection.

These considerations also show that there is no force in the objection that the indictment does not specify the place at which the grand jury that found it was sitting, and also as to the certainty of the venue.

The only remaining question is in reference to the description of the draft which was in the letter destroyed. It is insisted that this is not sufficient. This objection cannot be sustained. The gravamen of the charge is the destruction of the letter. It is an offence against the postal laws of the United States, and while the letter must contain a draft, cheque or some other thing of value or supposed value in order to bring the case within the compass of this statute, yet it is unnecessary to describe this draft, cheque, etc., with the same precision as if forgery or some other crime directed against the instrument itself was charged. A full description

of the cheque or draft being unessential, it is clearly sufficient when the grand jury say that the instrument having been destroyed they are unable to give any further description than such as is found in this indictment, for that, as will be seen, contains some matters of description and identification. There being no other questions presented in the record, and in these appearing no error, the judgment of the Circuit Court is

*Affirmed.*

MR. JUSTICE GRAY and MR. JUSTICE WHITE dissented.