**UNITED STATES v. BOARD OF COM'RS OF OSAGE COUNTY, OKL., et al.**
(six cases).

Nos. 2658, 2659, 2683, 2695, 2699, 2709.

District Court, N. D. Oklahoma.
Feb. 14, 1939.

Whit Y. Mauzy, U. S. Atty., and Chester A. Brewer, Asst. U. S. Atty., both of Tulsa, Okl.

Charles R. Gray, Ladd II. Gambill, and Sim T. Carman, all of Pawhuska, Okl., for defendants.

FRANKLIN E. KENNAMER, District Judge.

The United States of America, on behalf of numerous Osage Indians, has instituted six different suits, wherein the Government seeks to recover for said Indians taxes paid on real estate in Osage County, Oklahoma, for the year 1936. There are two hundred twenty nine causes of action involved in the six suits, and the total sum sought to be recovered is twenty eight thousand one hundred forty five & 80/100 dollars ($28,145.80) in taxes paid. The real estate on which the taxes were paid under protest, is land and town property, both residence and business.

In each cause of action it is alleged that the property on which the taxes were paid under protest was purchased with restricted funds of Osage Indians, and that such property is restricted against alienation or incumbrances, except with the consent or approval of the Secretary of Interior. It is also alleged that the real estate is nontaxable under and by virtue of Section 2 of the Act of Congress of June 20, 1936, 49 Stat. 1542, 25 U.S.C.A. § 412a, but that notwithstanding the nontaxability of the real estate, the County officials of Osage County, Oklahoma, assessed it for taxation for the year 1936, and that such taxes for that year were paid under protest, and the suits are instituted for the purpose of recovering the taxes so paid.

The defendants have interposed demurrers or motions to dismiss, in which it is urged that the petitions do not state facts sufficient to constitute a cause of action; that the petitions show no recovery can be had of any taxes assessed, levied, paid or collected for the year 1936, and finally, that the petitions show that the Act of Congress upon which recovery is

sought has no application to the Osage Indians or to the property on which the taxes were paid. The cases come on for hearing upon the demurrers or motions to dismiss.

The Act of Congress relied on for recovery herein, is as follows:

"An Act To relieve restricted Indians whose lands have been taxed or have been lost by failure to pay taxes, and for other purposes.

"Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled:

"[Section 1.] That there is hereby authorized to be appropriated, out of any money in the Treasury of the United States not otherwise appropriated, the sum of $25,000, to be expended under such rules and regulations as the Secretary of the Interior may prescribe, for payment of taxes, including penalties and interest, assessed against individually owned Indian land the title to which is held subject to restrictions against alienation or encumbrance except with the consent or approval of the Secretary of the Interior, heretofore purchased out of trust or restricted funds of an Indian, where the Secretary finds that such land was purchased with the understanding and belief on the part of said Indian that after purchase it would be nontaxable, and for redemption or reacquisition of any such land heretofore or hereafter sold for nonpayment of taxes.

"Sec. 2. All lands the title to which is now held by an Indian subject to restrictions against alienation or encumbrance except with the consent or approval of the Secretary of the Interior, heretofore purchased out of trust or restricted funds of said Indian, are hereby declared to be instrumentalities of the Federal Government and shall be nontaxable until otherwise directed by Congress.

"Approved, June 20, 1936."

The above Congressional Act was amended, insofar as Section 2 thereof is concerned, as follows:

"Sec. 2. All homesteads, heretofore purchased out of the trust or restricted funds of individual Indians, are hereby declared to be instrumentalities of the Federal Government and shall be nontaxable until otherwise directed by Congress: Provided, That the title to such homesteads shall be held subject to restrictions against alienation or encumbrance except with the approval of the Secretary of the Interior: And provided further, That the Indian owner or owners shall select, with the approval of the Secretary of the Interior, either the agricultural and grazing lands, not exceeding a total of one hundred and sixty acres, or the village, town, or city property, not exceeding in cost $5,000, to be designated as a homestead.

"Approved, May 19, 1937." 50 Stat. 188, 25 U.S.C.A. § 412a.

The above are set forth in full, as the determination of the cases rests solely upon them.

It is contended by the defendants, in support of their demurrers, that the above Act of June 20, 1936, when construed with other Congressional Acts relating to Osage Indians, shows an intention of Congress to allow Osage Indians tax exemption on homesteads alone; that the Amendment of May 19, 1937, discloses that the intention of Congress was to limit the tax exemption to homesteads of not more than one hundred sixty acres of land; that the Act cannot apply to the taxes for the year 1936, for the reason that such lands become subject to taxation in Oklahoma on January first of each year, and the Congressional Act was not passed until June of said year, and finally, that the Congressional Act is an invasion of State rights and contrary to the Constitution of the United States.

It is urged, on behalf of the United States, that the actions are well taken and the petitions state valid causes of action, for the reason that the Congressional Act involved is plain and unambiguous, and that the Court cannot resort to other Congressional Acts governing Osage Indians or to the Amendment to the particular Act, in order to ascertain the intention of Congress. It is also argued that the Congressional Act plainly speaks the intention of Congress, being clear upon its face, and when standing alone is fairly susceptible of but one construction and that the court cannot give it another construction by referring to other Congressional Acts. It is further contended that the Act in question deals with an entirely distinct and separate matter from any special Acts governing Osage Indians, and that the Act of June 20, 1936, is not limited by any prior Acts of Congress. Another contention is that the Amendment of May 19, 1937, cannot be considered in con-

struing the particular Act because the court must assume that Congress acted intelligently, and since it has so plainly expressed its intention in the Act itself, that intention must be given effect; also the report of the Committees of Congress cannot be used for the purpose of construing an Act contrary to its plain terms. It is further urged that the Act affects 1936 taxes and for that reason the lien of the taxes do not attach until July of 1936, and subsequent to the passage of the Congressional Act.

Defendants contend that the prior Osage Acts are important in ascertaining the intention of Congress in the Act of June 20, 1936, and that when so construed the intention is to allow each Osage Indian a tax exemption of not more than one hundred sixty acres of land. The prior acts referred to are the Osage Act of June 28, 1906, 34 St.L. 539, which Act provides that the homestead of the allottee shall remain inalienable and non-taxable, so long as title remains in the allottee and exempts all land other than homestead from taxation, for a term of three years from the approval of the Act.

The Osage Act of April 18, 1912, 37 St.L. 86, provides that the Secretary of the Interior is authorized to pay the taxes on lands out of any money due and payable to the heirs, from the segregated funds of deceased Indians, and also provides that inherited moneys shall be liable for funeral expenses and expenses of last illness of deceased Osage Indians, and exempts certain properties from debts, but provides that nothing in the Act shall be construed so as to exempt such property from liability for taxes.

The Act of February 27, 1925, 43 St.L. 1008, 25 U.S.C.A. § 331 note, authorized the Secretary of the Interior to pay Osage Indians less than their income and to conserve the balance and invest the same, after paying taxes of such members.

The Act of March 2, 1929, 45 St. 1478, extends the trust period, and provides that the tax-exempt land of any Osage Indian allottee, heir, or devisee, shall not at any time exceed one hundred sixty acres. It is contended that these Acts show an intention upon the part of Congress to exempt only homesteads not in excess of one hundred sixty acres of land, from taxation for Osage Indians, and that the Act of June 20, 1936, should be limited to that extent. It is insisted that the first paragraph of the Act provides for an appropriation of $25,000 for the payment of taxes and redemption of lands sold for taxes, and that since the amount involved in the six suits under consideration exceeds $25,000, that the Act shows by its very terms that it is not applicable to Osage Indians.

■ The Government relies upon the second paragraph of the Act for its right to recover. As noted, the second paragraph provides that all lands purchased from restricted funds shall be non-taxable. There is no conflict in the Act of June 20, 1936, and the earlier Osage Acts. It is certainly within the power of Congress to exempt restricted lands from taxation, and the Act of June 20, 1936, plain and unambiguous as it is, provides that all lands purchased out of trust or restricted funds of Indians are declared to be instrumentalities of the Federal Government and non-taxable. This Act supplements the earlier Osage Acts; it cannot be restricted by them because there is no conflict in the Acts, and no construction can be placed thereon except the one clearly apparent on its face. The Act, being clear upon its face, and when standing alone is fairly susceptible of but one construction, this court is bound to give it such a construction. See Hamilton v. Rathbone, 175 U. S. 414, 20 S.Ct. 155, 44 L.Ed. 219; United States v. Goldenberg, 168 U.S. 95, 18 S.Ct. 3, 42 L.Ed. 394; Cambria Iron Co. v. Ashburn, 118 U.S. 54, 6 S.Ct. 929, 30 L.Ed. 60; Deffeback v. Hawke, 115 U. S. 392, 6 S.Ct. 95, 29 L.Ed. 423; United States v. Averill, 130 U.S. 335, 9 S.Ct. 546, 32 L.Ed. 977; United States v. Lacher, 134 U.S. 624, 10 S.Ct. 625, 33 L.Ed. 1080; Yerke v. United States, 173 U.S. 439, 19 S.Ct. 441, 43 L.Ed. 760; Helvering v. City Bank Farmers' Trust Co., 296 U.S. 85, 56 S.Ct. 70, 80 L.Ed. 62; Osaka Shosen Kaisha Line v. United States, 300 U.S. 98, 57 S.Ct. 356, 81 L.Ed. 532.

■ It is next urged by the defendants that the earlier Osage Acts are special Acts, and that the Act of June 20, 1936, being a general one, the special Acts are controlling. The Acts deal with distinct and separate matters. If they related to the same matters, and the subsequent Acts did not repeal or alter the earlier Acts, then the contention would be sound. The Act of June 20, 1936, is general in the sense that it refers to lands purchased from trust or restricted funds of all Indians

and provides all such lands shall be non-taxable, whereas, the Osage Acts merely relate to homesteads. It is within the power of Congress to exempt such lands, and the Act of June 20, 1936, is therefore a special Act in the sense that it deals specifically with lands purchased out of trust or restricted funds. As the Osage Acts and the Act under consideration deal with different subject matters, and the 1936 Congressional Act is special in that it pertains to lands purchased out of restricted funds, the earlier Osage Acts do not restrict it in its meaning or effectiveness.

It is next contended that the Amendment of May 19, 1937, shows an intention upon the part of Congress to limit the Act of June 20, 1936, to homesteads of not exceeding one hundred sixty acres of land. As the Act is plainly written and shows clearly an intention to exempt from taxation all land purchased out of trust or restricted funds, that meaning cannot be restricted by the subsequent Amendment. If the Act means what defendants contend, then the Amendment of May 19, 1937, was unnecessary. It appears that the Amendment of May 19, 1937, was enacted as it was the desire of Congress to restrict and limit the Act of June 20, 1936, to homesteads of not exceeding one hundred sixty acres. This Court must assume that Congress intended what it plainly said, and that the Amendment was enacted for the definite purpose of changing the existing law. See Rosecrans v. United States, 165 U.S. 257, 17 S.Ct. 302, 41 L.Ed. 708; United States v. Southern Pacific Co., D.C., 230 F. 270.

It is argued by the defendants that Section 1 and Section 2 of the Act of June 20, 1936, must be construed together with earlier Osage Acts, and when so construed an intention must be gleaned that the Act is not applicable to Osage Indians. This argument is based upon the proposition that only $25,000 was appropriated in the first Section of the Act, and it is contended that it could not be applicable to all Indians, as the taxes involved in these suits alone exceed that sum. This proposition is unsound, for the reason that Section 1 provides an appropriation for the payment of taxes and redemption of lands, while Section 2 deals with another subject. The two Sections may pertain to identical tracts of land, but the two sections are different,—one providing for an appropriation and the other for the non-taxability of lands. The construction contended for will render nugatory the plain words of one Section of the Statute. Courts will not render void plain words of a Statute unless they are compelled to do so by Statutory constructions compelling such a result.

Defendants insist that the report of the Senate Committee on Indian affairs clearly shows that the Act of June 20, 1936, does not apply to Osage Indians or their property. Legislative history may be referred to to ascertain the meaning of a Statute, when such a Statute is ambiguous or uncertain. It is merely an aid in construing an uncertain or ambiguous Statute. See United States v. Great Northern Railway Co., 287 U.S. 144, 53 S.Ct. 28, 77 L.Ed. 223; United States v. St. Paul, Minneapolis and Manitoba Railway Company et al., 247 U.S. 310, 38 S.Ct. 525, 62 L.Ed. 1130. The rule seems to be that reports of Congressional Committees may be resorted to for the purpose of explaining the meaning of a provision, but not for the purpose of construing it contrary to its plain terms; it can be used only to remove ambiguity.

It is urged by defendants that the lands in question became subject to taxation by the State of Oklahoma on the 1st day of January, 1936, and that the Act of Congress enacted subsequent thereto could not relieve such lands from the burden of taxation. This presents a rather difficult question for decision in light of holdings of the Supreme Court of Oklahoma, which cases must govern the decision herein. The government contends that the tax lien did not attach until July of 1936, which was subsequent to the passage of the Act of June 20, 1936. Cases are cited wherein the Federal Government purchased property for governmental use prior to the tax lien attaching, and wherein it has been held that the government acquired such lands free of such tax lien. See United States v. Pierce County, D.C., 193 F. 529; Bannon v. Burnes, C. C., 39 F. 892, 893; United States v. City of Buffalo, 2 Cir., 54 F.2d 471. This is not a case where the Federal Government has purchased land, but involves a question where a federal instrumentality has been created by legislative enactment, exempting such lands from taxation. No question of a tax lien is

involved in these suits, because the Government paid the taxes under protest and discharged the tax lien.

 The latest expression from the Supreme Court of Oklahoma with respect to the questions here involved is In re Sinclair-Prairie Oil Co., 175 Okl. 289, 53 P.2d 221, 226, wherein the Supreme Court of Oklahoma considered a case involving the status of certain oil produced and machinery and equipment involved in connection there with. The Statute of Oklahoma, upon which reliance is placed by the defendants herein, is Sec. 12581, O.S. 1931, Title 68, § 81, Okl.St.Ann., which provides that property shall be assessed for taxation on the first day of January of each year. In the cited case the Oklahoma Supreme Court, in discussing the above Statute, stated that it provides that all taxable property shall be listed and assessed, and that the meaning was that property to be legally assessed ad valorem must be within that class of property subject to such taxation on the assessment date, and that assessing officials may not look beyond the time fixed for assessment in an effort to ascertain the taxability of property, but the question of its taxability must be determined as of the time fixed by law for such purpose. The court further stated that "the ad valorem tax status of property must be fixed as of that day," meaning January first. This case indicates that the status of property for ad valorem taxation purposes must be determined as of January first of each year.

The following cases are cited in the Sinclair-Prairie case in support of the proposition: New England Oil & Pipe Line Co. v. State Board of Equalization, 121 Okl. 277, 249 P. 914; Board of County Commissioners v. Central Baptist Church, 136 Okl. 99, 276 P. 726, 63 A.L.R. 1327.

In Re Texas Company's Assessment, 168 Okl. 94, 31 P.2d 929, 932, the Supreme Court of Oklahoma considered a case of whether the tax year began January first or July first. The question arose by reason of the payment of gross production taxes, exempting certain machinery, appliances and equipment required for the operation of the leases, which had been assessed for taxation by a tax ferret as of January first, and before Congress had provided for the payment of gross production taxes from restricted allotted lands of members of the Five Civilized Tribes of Indians. In this case the question was squarely presented to the Supreme Court of Oklahoma, and it held that Congress, in making minerals produced from restricted lands of members of the Five Civilized Tribes of Indians subject to gross production tax after April 26, 1931, except where the machinery or equipment used in producing minerals was subject to ad valorem taxation for the fiscal year ending June 30, 1931, clearly showed an intention that the equipment and machinery should not be subject to double taxation. The Supreme Court stated: "The tax is not levied in January, or as of January, but the levy is made in July for the current fiscal year." It concluded that the property would have been subject to double taxation if the machinery and equipment assessed for ad valorem taxation on January first was used for producing minerals on which gross production taxes were payable after April 1931. The court squarely held that January first is the assessment date, rather than the tax levy date. As no levy of ad valorem taxation is made in Oklahoma until July first, and as the property involved in these cases was exempt from taxation prior to the 1st day of July, 1936, Osage County, Oklahoma, was powerless to legally levy ad valorem taxes upon the property involved, and the plaintiffs are entitled to recover the taxes paid under protest in payment of the legally levied taxes.

 Defendants' final contention is that the Congressional Act is an invasion of State rights and is, therefore, unconstitutional. It is within the power of Congress to define particular lands as Federal instrumentalities and to exempt them from taxation, and such Congressional action is not an invasion of State rights or contrary to the Federal Constitution. See Shaw, Auditor, v. Gibson-Zahniser Oil Corporation, 276 U.S. 575, 48 S.Ct. 333, 72 L.Ed. 709.

The Enabling Act, Sec. 1, 34 Stat. 267, June 16, 1906, c. 3335, § 1, providing for the admission of Oklahoma and the Indian Territory as a State, made express provision that the Constitution of Oklahoma should not limit or affect the authority of the Government of the United States to make any law or regulation respecting Indians or their lands or property. It has been determined by the Oklahoma Supreme Court that general tax laws were suspended from operation on Indian lands so long as such lands were exempt from

taxation by laws of Congress, or by treaty. Wynn v. Fugate, 149 Okl. 210, 299 P. 890. By the adoption of the terms of the Enabling Act, Oklahoma has disclaimed its right and authority to limit or affect the power of the Government to make any laws or regulation respecting Indians, their lands, property or other rights, which the Government might have made had the territory embracing the same not been created into a State. This carries with it the right to exempt such lands from taxation, as well as the right of Congress to reimpose restrictions thereon, or to constitute them Federal instrumentalities. See Molone v. Wamsley, 80 Okl. 181, 195 P. 484; Gleason v. Wood, 28 Okl. 502, 114 P. 703 (but reversed on other grounds in 224 U.S. 679, 32 S.Ct. 571, 56 L.Ed. 947); Choate v. Trapp, 28 Okl. 517, 114 P. 709 (but reversed on other grounds in 224 U.S. 665, 32 S.Ct. 565, 56 L.Ed. 941.) There cannot be an invasion of State rights because a condition of statehood was the reserving by the Federal Government of power and authority over Indians, their lands and property, and the contention of the defendants with respect thereto is, therefore, untenable.

The motions to dismiss or demurrers may be overruled, and exceptions allowed the defendants.