Robert ADAMS, Petitioner,

v.

UNITED STATES of America, Respondent.

No. 76 C 1990.

United States District Court,
E. D. New York.

Dec. 17, 1976.

Robert Adams, pro se.

David G. Trager, U. S. Atty., E. D. N. Y. by Allyne R. Ross, Asst. U. S. Atty., Brooklyn, N. Y., for respondent.

## MEMORANDUM AND ORDER

PLATT, District Judge.

Petitioner has filed, *pro se,* a motion to vacate, set aside or correct the sentence imposed upon him by this Court. Title 28 U.S.C. § 2255.

In July of 1974,[1] petitioner was transferred from the Greenhaven Prison, Stormville, New York, to the Federal Courthouse for the Eastern District of New York pursuant to a writ of *habeas corpus ad testificandum* issued by this Court. The Writ requested petitioner's presence to testify before a Federal Grand Jury in the case of *U. S. v. John Doe.* At that time, no federal charges were pending against the petitioner. On July 29, 1974, he was returned to the Greenhaven prison.

Approximately eighteen months later, on December 12, 1975, a complaint was filed in the United States District Court for the Eastern District of New York charging petitioner with a violation of Title 18 U.S.C. § 2113(a), (bank robbery). On May 28, 1976, petitioner waived indictment and pled guilty to an information charging him with a violation of Title 18 U.S.C. § 371, (conspiracy). On August 27, 1976, he was sentenced to four years in jail on the information.

Petitioner argues herein that Article IV(e) of the Interstate Agreement on Detainers, Title 18 U.S.C. Appendix,[2] mandates that this Court vacate his plea and sentence, and dismiss the information with prejudice because he was returned to Greenhaven, the original place of his incarceration, prior to trial on the bank robbery charge. Petitioner further contends that he is entitled to immediate release on bail.

## I

The Interstate Agreement on Detainers was enacted in 1970 to encourage the expeditious disposition of pending criminal cases. Article I of the Act states:

"The party States find that charges outstanding against a prisoner, detainers based on untried indictments, informations, or complaints and difficulties in securing speedy trial of persons already incarcerated in other jurisdictions, produce uncertainties which obstruct pro-

grams of prisoner treatment and rehabilitation. Accordingly, it is the policy of the party States and the purpose of this agreement to encourage the expeditious and orderly disposition of such charges and determination of the proper status of any and all detainers based on untried indictments, informations, or complaints. The party States also find that proceedings with reference to such charges and detainers, when emanating from another jurisdiction, cannot properly be had in the absence of cooperative procedures. It is the further purpose of this agreement to provide such cooperative procedures."

Most relevant to the instant petition, Article IV(e) provides:

"If trial is not had on any indictment, information, or complaint contemplated hereby prior to the prisoner's being returned to the original place of imprisonment pursuant to article V(e) hereof, such indictment, information, or complaint shall not be of any further force or effect, and the court shall enter an order dismissing the same with prejudice."

The purpose of the Act is to help alleviate the uncertainty and anxiety of prisoners resulting from pending criminal cases. Such "Damoclean Swords" are said to have a detrimental effect upon prisoner rehabilitation. The Act is also intended to prescribe a uniform procedure to secure the presence of prisoners incarcerated in other jurisdictions. 3 U.S.Code Cong. & Admin. News p. 4864 (1970); 116 Cong.Rec. 38840 (1970).

The language of the Act and its legislative history clearly show that it does not apply to writs of *habeas corpus ad testificandum* where no charges are pending against the prisoner at the time that the Writ is issued. The words "outstanding charges, indictments, informations or complaints", and the phrase "difficulties in securing speedy trial" refer to *pending crimi-*

---

1. The government claims that it was on July 25, 1974. The petitioner alleges that it was on July 23, 1974. However, the date is not significant to resolution of the issues raised herein

and thus there is no need for this Court to decide the dispute.

2. Adopted in New York as C.P.L. § 580.20.

*nal charges.* The legislative history, including the address by a sponsor of the legislation, Congressman Kastenmeier, letters from the Deputy Attorney General and the Assistant to the Commissioner of the District of Columbia fully support this view.

In the case at bar, it is undisputed that at the time that the writ of *habeas corpus ad testificandum* was issued and satisfied, no federal charges, whether by complaint, information or indictment, were pending against the petitioner in the Eastern District of New York. Thus, the Act is inapplicable here.

Furthermore, the issuance of the writ of *habeas corpus ad testificandum* in this case could not have resulted in the petitioner suffering the "anxieties" that Congress was concerned with when it enacted this legislation since no charges were then pending against him. Thus, the purpose of the Act would not be served by applying it in this case.

In addition, if this Court were to hold as petitioner contends it must that the writ of *habeas corpus ad testificandum* is subject to the restrictions imposed by the Act, it would place an unreasonable and unintended burden on the government's and the grand jury's investigative function. A prisoner summoned pursuant to the Writ could then require that any subsequent prosecution occur within 180 days of his demand (Article III(a)). The government would also be forced to keep him in federal custody until the trial in order to avoid the sanctions imposed by Article IV.

Such an interpretation would also appear to conflict with the Second Circuit's recent decision in *U. S. v. Vispi,* 545 F.2d 328 (1976) wherein the Court rejected the argument that the time spent in the investigative stage of a criminal case should be considered in assessing pre-information delay under the Speedy Trial Act.

The Second Circuit recently considered the applicability of the Interstate Agreement on Detainers to writs of *habeas corpus ad prosequendum.* The Court held in *U. S. v. Mauro,* 544 F.2d 588 (1976) that the writ of *habeas corpus ad prosequendum* is substantially the same as an interstate detainer and is thus subject to the same restrictions that Article IV imposes on detainers. The Court analyzed the nature and function of the writ of *habeas corpus ad prosequendum* and concluded that the Writ and the detainer are the same notification to the prisoner that he is wanted to *stand trial* in another jurisdiction. The Court reasoned that any other construction would permit the government to circumvent the Agreement by utilizing the Writ instead of the detainer.

*Mauro and Fusco* does not control the instant case. While the purpose of both the writ of *habeas corpus ad prosequendum* and the interstate detainer is to secure a defendant's presence for trial, the purpose of the writ of *habeas corpus ad testificandum* is only to secure a defendant's presence to testify. *Gilmore v. United States,* 129 F.2d 199, 202 (10th Cir. 1942); *Neufield v. United States,* 73 App.D.C. 174, 118 F.2d 375, 385 (1941); *In re Thaw,* 166 F. 71, 74 (3d Cir. 1908); 97 C.J.S. Witnesses § 30. For example, the Writ in the instant case stated that petitioner was wanted, "to testify and give evidence before the Federal Grand Jury in the case of *U. S. v. John Doe.*" It was neither "notification . . . advising that he (was) wanted to stand trial on pending criminal charges," *U. S. v. Mauro, supra,* at 591, nor was it issued by a "jurisdiction in which an untried indictment, information, or complaint [was] pending", Interstate Agreement on Detainers IV(a). While it is conceivable that misuse of the writ of *habeas corpus ad testificandum* to obtain prisoners for *trial* might result in a court reaching a conclusion similar to that reached in *Mauro and Fusco,* such a situation is not presented by the instant case. Here, we again stress that the indictment was not filed until eighteen months after petitioner's writ was satisfied and he was returned to state custody.

The other cases relied upon by the Second Circuit in deciding *Mauro and Fusco* are similarly inapposite. In *U. S. v. Sorrell,* 413 F.Supp. 138 (E.D.Pa.1976), the Court held

that where the defendant was brought to this district for arraignment pursuant to a writ of *habeas corpus ad prosequendum,* the provisions of the Interstate Agreement on Detainers were applicable and thus the return of the defendant to his original place of confinement required dismissal of the underlying indictment pursuant to Article IV(e).

Similarly, in *U. S. ex rel. Esola v. Groomes,* 520 F.2d 830 (3d Cir. 1975), the defendant was transferred pursuant to a writ of *habeas corpus ad prosequendum* to stand trial on an *outstanding indictment* but was transferred back and forth several times prior to trial. The Court concluded that the underlying indictment should be dismissed.

Thus, these Courts, like the Second Circuit in *Mauro and Fusco,* addressed only the question of the applicability of the Act to writs of *habeas corpus ad prosequendum* where criminal charges are *pending* against the transferred defendant. Significantly, the Court in *Esola* stated that; (at p. 836):

"Those whose problems are addressed in the Agreement are prisoners with outstanding criminal charges from another jurisdiction."

This language supports the result we reach herein.

In passing, were this a case of first impression (which of course it is not), we would have to agree with Judge Mansfield's dissent in *Mauro and Fusco* that a writ of *habeas corpus ad prosequendum* is far different from a detainer in both purpose and effect, but in any event it is clear to us that a writ *ad testificandum* is far different from both of the foregoing and hence this case is distinguishable from those cases which involve such instruments.

## II

Since we presume that petitioner's bail request is based on his belief in the soundness of his first contention, our decision on that issue is dispositive of such request.

For the foregoing reasons petitioner's application to vacate his plea of guilty and

sentence must be, and the same hereby is, denied.

SO ORDERED.