UNITED STATES of America, Appellant,

v.

Elias KENAAN, Defendant, Appellee.

No. 77–1014.

United States Court of Appeals,
First Circuit.

Argued April 5, 1977.

Decided July 7, 1977.

---

Jeremiah T. O'Sullivan, Sp. Atty., Dept. of Justice, Boston, Mass., with whom James N. Gabriel, U. S. Atty., Boston, Mass., and Gerald E. McDowell, Sp. Atty., Dept. of Justice, Washington, D.C., were on brief, for appellant.

James W. Lawson, Boston, Mass., with whom Martin G. Weinberg, Judith H. Mizner and Oteri & Weinberg, Boston, Mass., were on brief, for appellee.

Before COFFIN, Chief Judge, CAMPBELL, Circuit Judge, and MARKEY,[*] Chief Judge.

MARKEY, Chief Judge.

This is an appeal by the United States from an order of the United States District Court for the District of Massachusetts granting appellee's (Kenaan's) motion to dismiss an indictment on the ground that the Government had violated Article IV(e) of the Interstate Agreement on Detainers Act ("Agreement")[1] by transferring Kenaan from state to federal custody pursuant to a writ of habeas corpus ad prosequendum and then not trying him before returning him to state control.[2] We reverse and remand.

### Facts

On April 13, 1976, Kenaan was indicted by a grand jury of the District of Massachusetts for violations of the Internal Revenue Code.[3] At that time he was serving a sentence at the Lawrence House of Correction in Massachusetts for violation of that state's narcotics laws. On April 30, 1976, Kenaan was transferred to the United States District Court pursuant to a writ of habeas corpus ad prosequendum[4] issued by that court for the purpose of arraignment. Kenaan was arraigned and returned immediately thereafter to state custody. On

---

[*] Of the Court of Customs and Patent Appeals, sitting by designation.

1. Pub.L.No. 91–538, §§ 1–8, 84 Stat. 1397 (1970), *reprinted in* 18 U.S.C.A.App. at 207 (West Supp.1976); Act of Jan. 7, 1966, ch. 892, Mass. Acts, *reprinted in* Mass.Ann.Laws, special, at 603 (Michie/Law. Co-op 1967).

2. The opinion is reported at 422 F.Supp. 226.

3. The indictment charged Kenaan with wilfully evading the payment of income taxes and filing knowingly false income tax returns for the calendar years 1969, 1970 and 1971 in violation of 26 U.S.C. §§ 7201 and 7206(1).

4. 28 U.S.C. § 2241 states in pertinent part:

    § 2241. Power to grant writ

    (a) Writs of habeas corpus may be granted by the Supreme Court, any justice thereof, the district courts and any circuit judge within their respective jurisdictions. The order of a circuit judge shall be entered in the records of the district ·court of the district wherein the restraint complained of is had.

    \* \* \* \* \* \*

    (c) The writ of habeas corpus shall not extend to a prisoner unless—

    \* \* \* \* \* \*

    (5) It is necessary to bring him into court to testify or for trial.

June 28, 1976, Kenaan was again transferred to the same District Court pursuant to a second writ of habeas corpus ad prosequendum, this time to offer a guilty plea to the indictment. He was returned to state custody when the court declined to accept his guilty plea.

On August 16, 1976, Kenaan filed a motion to dismiss the indictment with prejudice, basing his motion on Article IV(e) of the Agreement. The motion was granted on October 28, 1976. Notice of this appeal was filed by the Government on November 22, 1976.

### Background

The Interstate Agreement on Detainers Act was enacted in 1970 by Congress on behalf of the United States and is now in force in 46 states. Article I of the Agreement briefly sets forth the problems it sought to solve and the policies it encouraged:

### Article I

The party States find that charges outstanding against a prisoner, detainers based on untried indictments, informations, or complaints and difficulties in securing speedy trial of persons already incarcerated in other jurisdictions, produce uncertainties which obstruct programs of prisoner treatment and rehabilitation. Accordingly, it is the policy of the party States and the purpose of this agreement to encourage the expeditious and orderly disposition of such charges and determination of the proper status of any and all detainers based on untried indictments, informations, or complaints. The party States also find that proceedings with reference to such charges and detainers, when emanating from another jurisdiction, cannot properly be had in the absence of cooperative procedures. It is the further purpose of this agreement to provide such cooperative procedures.

Article II(a) defines a "State" for purposes of the Act as including the United States of America. Pertinent portions of Article IV provide for transfer of prisoners at the request of the jurisdiction in which an action is pending and for dismissal of the pending charges if the prisoner is not tried prior to his return to the original place of imprisonment:

### Article IV

(a) The appropriate officer of the jurisdiction in which an untried indictment, information, or complaint is pending shall be entitled to have a prisoner *against whom he has lodged a detainer* and who is serving a term of imprisonment in any party State made available in accordance with article V(a) hereof *upon presentation of a written request for temporary custody or availability* to the appropriate authorities of the State in which the prisoner is incarcerated: *Provided,* That the court having jurisdiction of such indictment, information, or complaint shall have duly approved, recorded, and transmitted the request: *And provided further,* That there shall be a period of thirty days after receipt by the appropriate authorities before the request be honored, within which period the Governor of the sending State may disapprove the request for temporary custody or availability, either upon his own motion or upon motion of the prisoner.

\* \* \* \* \* \*

(e) If trial is not had on any indictment, information, or complaint contemplated hereby *prior to the prisoner's being returned to the original place of imprisonment* pursuant to article V(e) hereof, such indictment, information, or complaint shall not be of any further force or effect, and the court shall enter an order dismissing the same with prejudice. [Emphasis added].

### Issue

The sole issue is whether the District Court erred in applying the provisions of the Agreement to the Government's action in using the writs of habeas corpus ad prosequendum,[5] thus treating, in effect, the

---

5. The circumstances here resemble those in *United States v. Mauro,* 544 F.2d 588 (2d Cir. 1976) and *United States v. Scallion,* 548 F.2d

Agreement as the exclusive means by which the United States may obtain custody of a state prisoner in disposing of pending federal charges.[6]

## OPINION

Although the District Court relied on recent decisions in the Second and Third Circuits, holding the Agreement to be the exclusive means of prisoner transfer for prosecution,[7] we decline to follow those precedents. Our view of the relationship between the Agreement and the writ of habeas corpus ad prosequendum more closely accords with that expressed by the Fifth Circuit in *United States v. Scallion, supra* note 5, and set forth in *United States v. Mauro, supra* note 5 (Mansfield, J., dissenting). See also *Adams v. United States*, 423 F.Supp. 578, 581 (E.D.N.Y.1976).

■ The differences between a detainer and a writ of habeas corpus ad prosequen-

dum, in purpose, legal basis, and historical context, are so fundamental as to constitute each a separate, distinct avenue for obtaining custody of prisoners for federal prosecution.

A detainer is a formal notification, lodged with the authority under which a prisoner is confined, advising that the prisoner is wanted for prosecution in another jurisdiction. S.Rep. No. 91–1356, 91st Cong., 2nd Sess. 2, *reprinted in* [1970] U.S.Code Cong. & Ad. News, 4864, 4865. Long before the enactment of the Agreement, a detainer was treated as merely a request that the prisoner not be released until he could be taken into custody by the requesting state. In a sense, it was a request that the prisoner be placed on the "will call" shelf, and many prisoners labeled "will call" were never called for. On the other hand, the sending state was under no obligation to detain or deliver the prisoner except as it might

1168 (5th Cir. 1977) in that no separate detainer was lodged. *Contra, United States v. Cyphers*, Nos. 76–1131, 76–1160, 556 F.2d 630 (2d Cir. 1977), *United States v. Ford*, 550 F.2d 732 (2d Cir. 1977), and *United States v. Sorrell*, 413 F.Supp. 138 (E.D.Pa.1976).

**6.** The Government raises the issue of whether Congress intended the United States to participate in the Agreement as a "sending state" but not as a "receiving state." In our view of the case, it is unnecessary to decide the question posed, no detainer having been lodged. We find, however, no expression of such intent in the statute. On the contrary, Article II(a) defines a State as "a State of the United States; the United States of America; * * * Puerto Rico." Articles II(b) and (c) define sending and receiving State without distinguishing the United States. Were we required to decide the question, we would, on this record, conclude that the United States participates as both a sending and a receiving State and that when it lodges a detainer, as it did in *Cyphers, Ford* and *Sorrell, supra* note 5, the United States must comply with the Agreement. We would note, in passing, the absence of stated reasons in support of the Government's effort to deny itself the option of proceeding under the Agreement.

**7.** See, e. g., *United States v. Sorrell, supra* note 5, *United States v. Mauro, supra* note 5, aff'g 414 F.Supp. 358 (E.D.N.Y.1976), and *U. S. ex rel. Esola v. Groomes*, 520 F.2d 830 (3d Cir. 1975). We note that the latter case does not involve transfer from state to federal custody,

but the reverse situation which is similar to that in *Smith v. Hooey*, 393 U.S. 374, 89 S.Ct. 575, 21 L.Ed.2d 607 (1969) and in *Dickey v. Florida*, 398 U.S. 30, 90 S.Ct. 1564, 26 L.Ed.2d 26 (1970), the only cases cited in the House or Senate Judiciary Committee Reports on the Agreement bill. See H.R.Rep.No.91–1018, 91st Cong., 2d Sess. 2 (1970); S.Rep.No.91–1356, 91st Cong., 2d Sess. 2 (1970), *reprinted in* [1970] U.S.Code Cong. & Ad.News, 4864. Both deal with the primary purpose of Article IV, i. e., the elimination of abuses of detainers by states. Neither *Smith* nor *Dickey* mentions any problems associated with the use of writs of habeas corpus ad prosequendum by federal prosecutors. See *United States v. Scallion, supra* note 5, at 1172–1173. The Sixth Circuit has recently concluded that the issuance of a writ of habeas corpus ad prosequendum satisfies both requirements of Article IV(a) of the Agreement, i. e., that a detainer be lodged and that a written request for temporary custody be made. *United States v. Roberts*, 548 F.2d 665, 670 (6th Cir. 1977). However, that court did not discuss the impact of that view on the continued viability of 28 U.S.C. § 2241, because its judgment rested on the pre-trial detainee status of one appellant.

The issue before us is currently also before the Eighth Circuit in *Speed v. United States*, No. 77–1126, and before the Ninth Circuit in *United States v. Adkins*, No. 76–3526. The Third Circuit vacated its opinion in *United States v. Sorrell*, No. 76–1647, and has set the case for rehearing en banc.

choose to do so, a privilege maintained in modified form by Article IV(a) of the Agreement, which provides that the Governor of the requested state may refuse the request within 30 days after its receipt. The Agreement, as above indicated, added to the ancient practice the penalty of dismissal for failure to prosecute the prisoner obtained in response to lodgement of a detainer.

A federal writ of habeas corpus under § 2241 is by contrast a federal court order, commanding the presentation of a prisoner for prosecution or as a witness in a federal court. It is judicially controlled by the federal district court, which may issue it for the production of a prisoner when "it is necessary to bring him into court to testify or for trial." 28 U.S.C. § 2241(c)(5). Upon receipt of such a writ, state authorities deliver the prisoner in accordance with its terms and in compliance with § 2241.[8] If the court which issued the writ is satisfied that the prisoner's presence is no longer needed or will not be required temporarily, as occurred in this case following Kenaan's arraignment and his presentation of a guilty plea, it may order the prisoner returned to state custody.

Analysis of the abuses which Congress and the states sought to curb with the Agreement further illustrates the differences between the detainer and the writ. Described only as "uncertainties which obstruct programs of prisoner treatment and rehabilitation" in Article I of the Agreement quoted above, the abuses and their results were many. Prior to the Agreement, detainers were filed indiscriminately, often with no notification to the prisoner, on mere suspicion, and without procedural safeguards. Outstanding detainers frequently provided grounds for denial of parole, participation in special work, athletic and release programs, visiting privileges, and minimum security status. Normally, a prisoner was required to serve out his sentence in the first jurisdiction before being tried in the second, impeding chances for successful rehabilitation, hindering judges in rendering appropriate sentences, preventing concurrent service of sentences in the two jurisdictions and, as indicated in Article I of the Agreement, hindering parole and prison authorities in devising an appropriate rehabilitation program for the prisoner concerned. Long delays before trial in the second jurisdiction were prejudicial to the prisoner's defense as evidence was lost, witnesses disappeared, and memories faded. The mechanics of transfer were complicated by an absence of uniform rules and states were often reluctant to give up prisoners at all.[9] The Agreement was specifically designed to remedy these problems by clearing detainers against a prisoner through prompt disposition of charges in another jurisdiction.

A writ of habeas corpus ad prosequendum, however, has never been associated with any of the foregoing problems. As a court order, it is carried out immediately and is discharged when the prisoner is returned to state custody, unlike the detainer which had remained outstanding against the prisoner prior to the Agreement. While federal charges may remain pending against a prisoner after discharge of a writ, as was the case following Kenaan's unaccepted offer of a guilty plea, that situation does not involve the potential for abuse intended to be corrected by the Agreement.[10] We share the District

---

**8.** It appears that no state has ever refused to honor the writ and the Supreme Court has found it unnecessary to decide whether the Supremacy Clause requires the states' obedience. *Carbo v. United States,* 364 U.S. 611, 81 S.Ct. 338, 5 L.Ed.2d 329 (1961). In the unlikely event of such a confrontation, we are confident that the writ would be held enforcible. See *United States v. Mauro, supra* note 5, at 596 n.1 (Mansfield, J., dissenting) and *United States v. Scallion, supra* note 5, at 1173.

**9.** For a more detailed account of the numerous problems which led to passage of the Agreement, see the thorough opinion accompanying the decision in *United States v. Ford, supra* note 5.

**10.** In this case Kenaan would have been confined in the same facility if held in federal custody during the conduct of his trial. Though argued by the Government, the coincidence has not influenced our decision.

Court's concern, and that of the other federal courts which have expressed it, that Article IV(e) of the Agreement not be made "meaningless," which could occur if federal authorities were to employ the writ as merely a means of circumventing the strictures of the Agreement. Our concern is lessened if not dissipated, however, by two further considerations. First, the concern rests on a hypothetical. The writ and the actions taken pursuant thereto being under the control of the issuing court, we are confident that the court will be alert to, and fully empowered to forestall, potential abuses of the writ. Second, any concern over potential delay-in-trial abuses by the federal Government are further diminished by the provisions of the federal Speedy Trial Act of 1974, 18 U.S.C. §§ 3161–3174.

Moreover, the construction urged by Kenaan would impliedly repeal or modify the statute establishing the writ, § 2241(c)(5), with no mention whatever of the slightest congressional intent so to do in the legislative history of the Agreement. That legislative history is totally silent respecting any effect of the Agreement on traditional federal writ practice.[11] Where two seemingly inconsistent acts can reasonably stand together, a court must interpret them in a manner which gives harmonious operation and effect to both, in the absence of clear and unambiguous expression of Congressional intent to the contrary. *Morton v. Mancari*, 417 U.S. 535, 549–551, 94 S.Ct. 2474, 41 L.Ed.2d 290 (1973), *United States v. Borden Co.*, 308 U.S. 188, 198, 60 S.Ct. 182, 84 L.Ed. 181 (1939). The presumption against implied repeal is even stronger here in view of the long history of the writ as a part of our legal framework under common law and statute. As stated in *United States v. Mauro, supra* note 5, at 597 (Mansfield, J., dissenting):

> The two statutes do not conflict with one another. When they are so easily reconcilable, it is error, in my view, to hold in

effect that § 2241 is implicitly repealed in part by the Act. See *Rosencrans v. United States*, 165 U.S. 257, 17 S.Ct. 302, 41 L.Ed. 708 (1897).

Finally, with respect to legislative intent, the apparent conflict between the Agreement and the writ centers about the particular use of the writ involved here, i. e., to produce a prisoner for prosecution. That the writ may be used for production of a prisoner as a witness, as specifically provided for in § 2241, is not, however, immaterial to consideration of congressional intent. Thus, if in enacting the Agreement Congress had intended any modification or amendment of § 2241 it would have necessarily intended to excise only the words "or for trial" from § 2241(c)(5). A total repeal would have discarded the provision for production as witnesses for no apparent reason.[12] The "conflict" between the detainer and the writ, being more apparent than real, constitutes no evidence of congressional intent to repeal § 2241, in whole or in part. On the contrary, § 2241 remains viable, in our view, in its entirety.

■ In summary, we hold that Kenaan's transfers to federal custody pursuant to writs of habeas corpus ad prosequendum were not subject to the provisions of the Interstate Agreement on Detainers Act. Accordingly, the order of the District Court granting Kenaan's motion to dismiss the indictment is reversed and the case is remanded for further proceedings not inconsistent herewith.

---

11. See the more detailed discussion of legislative history in the opinion accompanying the decision in *United States v. Scallion, supra* note 5.

12. Transfer of the prisoner under a writ of "habeas corpus ad testificandum" does not, of course, involve the abuses sought to be curbed by the Agreement.