UNITED STATES of America, Plaintiff,

v.

STATE OF CALIFORNIA, Defendant.

No. CV 80–27–EDP.

United States District Court,
E. D. California.

Oct. 7, 1980.

William B. Shubb, U. S. Atty., Francis M. Goldsberry, Asst. U. S. Atty., Sacramento, Cal., for plaintiff.

Roderick Walston, Deputy Atty. Gen., of Cal., San Francisco, Cal., for defendant.

## MEMORANDUM AND ORDER

PRICE, District Judge.

### I

### NATURE OF THE CASE

In preparation for the construction and operation of the New Melones Dam on the Stanislaus River as a component part of the Central Valley Project, the plaintiff (hereinafter "United States") made application to the State Water Resources Control Board of the State of California (hereinafter "Board") for permits to appropriate certain unappropriated water from the Stanislaus River watershed. In addition to the original applications filed by the Plaintiff, it also sought appropriative grants based on prior applications which had been filed by agencies of the State of California, the originator of the project in question. After lengthy hearings, the Board, on April 4, 1973, issued its decision, numbered 1422 (hereinafter denoted "D 1422") granting to the Plaintiff's appropriator's rights to the requested water, assigning to such appropriations the desired priority date. However, in D 1422, the Board imposed certain conditions upon the Plaintiff's impoundment, use and distribution of the total amount of water which the Board had granted to the Plaintiff in the foregoing grants of appropriator's rights. It is these conditions that the Board imposed, rather than the grants of appro-

priative rights, which engendered this litigation.

Simply stated, the United States now argues that some of the conditions imposed by the Board are in conflict with, and are contrary to the intent of Congress as expressed in the Reclamation Act of 1902, subsequent acts amendatory thereto, and the enactments authorizing the instant project.

The administrative function of the Board, its hearing and notice procedure, and the other elements of its permit granting powers are set forth in substantial detail in the California Water Code, §§ 1200 et seq. Unlike most other state administrative boards in California, its authority with regard to reconsideration of its decisions or orders, its basis for reconsideration of a decision or order, and the judicial review thereof, are spelled out in specific detail in §§ 1357, 1358 and 1360 of that Code. It should specifically be noted that § 1252.5 of the Water Code of California provides as follows:

"All rights and privileges conferred by this part upon any person in relation to the appropriation of water are likewise conferred upon the United States, the State, and any entity or organization capable of holding an interest in real property in this state."

Section 1358 of the Water Code provides:

"The decision or order may be reconsidered by the board on all the pertinent parts of the record and such argument as may be permitted, or a further hearing may be held, upon notice to all interested persons, for the purpose of receiving such additional evidence as the board may, for cause, allow. The decision or order on reconsideration shall have the same force and effect as an original order or decision."

Judicial review of the board's actions is found in § 1360 of the same Code:

Any person interested in any application may, within 30 days after final action by the board, file a petition for a writ of mandate in the superior court in and for the county in which the applicant seeks to divert water to inquire into the validity of the action of the board. If the applicant seeks to divert water in more than one county, the petition may be filed in any one of the counties. The right to petition shall not be affected by the failure to seek reconsideration before the board.[1]

Rather than avail itself of the provisions of administrative reconsideration and state court review as prescribed by the California Legislature, the United States filed a Complaint for Declaratory Relief in this court on October 15, 1973, long after the time for filing state action has expired.[2] In its complaint, prayers for relief by the United States in this action requested this court to:

(1) Enter judgment declaring that the United States of America can appropriate unappropriated waters necessary for use in any federal reclamation project within the State of California without the necessity of applying to the California State Water Resources Control Board;

(2) Enter judgment declaring that when the United States of America chooses, as a matter of comity, to submit applications to the California State Water

---

1. Prior to the announcement of the Supreme Court in the instant case, it was thought to be the law that the United States was not bound, in all instances, to acquire water by means of the California administrative scheme, or by eminent domain. [See *Dugan v. Rank*, 372 U.S. 609, 83 S.Ct. 999, 10 L.Ed.2d 15 (1963); *Fresno v. California*, 372 U.S. 627, 83 S.Ct. 996, 10 L.Ed.2d 28 (1963); *United States v. Gerlach Live Stock Co.*, 339 U.S. 725, 70 S.Ct. 995, 94 L.Ed.2d 1231 (1950).] But compare the majority and dissenting opinions in *United States v. California*, 438 U.S. 645, 98 S.Ct. 2985, 57 L.Ed.2d 1018 (1978).

2. Plaintiff invokes this court's jurisdiction pursuant to Title 28, U.S.C. § 1345:

"Except as otherwise provided by Act of Congress, the district courts shall have original jurisdiction of all civil actions, suits or proceedings commenced by the United States, or by any agency or officer thereof expressly authorized to sue by Act of Congress."

California admitted the truth of such allegations in its answer.

Resources Control Board, that the Board must grant such application if unappropriated waters are available;

(3) Enter judgment declaring that when the United States of America chooses, as a matter of comity, to submit applications to the California State Water Resources Control Board, that the Board cannot impose any terms or conditions in permits issued to such applications in contravention to Federal law; and

(4) Enter judgment declaring that Decision 1422 of the California State Water Resources Control Board is void in all respects where that decision conflicts with or contravenes Federal law; . . .

Plaintiff was successful in both the District Court[3] and the Court of Appeals.[4]

The Supreme Court of the United States, however, reversed in *California v. United States*, 438 U.S. 645, 98 S.Ct. 2985, 57 L.Ed.2d 1018 (1978). In remanding the case to this Court, Justice Rehnquist, speaking for a majority of six Justices directed that:

"Because the District Court and the Court of Appeals both held that California could not impose any conditions whatever on the United States' appropriation permit, those courts did not reach the United States' alternative contention that the conditions actually imposed are inconsistent with congressional directives as to the New Melones Dam. Nor did they reach California's contention that the United States is barred by principles of collateral estoppel from challenging the consistency of the permit conditions. Assuming, arguendo, that the United States is still free to challenge the consistency of the conditions, resolution of their consistency may well require additional fact-finding. . . . "

On September 27, 1978, Defendant (hereinafter "California"), filed a Motion for Summary Judgment and for Judgment on the pleadings in the matter. The matter was transferred to The Honorable Charles B. Renfrew for further proceedings, and he heard oral argument on the motion on March 1, 1979. Judge Renfrew, not having concluded the matter prior to his appointment as Assistant Attorney General, the matter was reassigned to the undersigned for decision.

## II

### CALIFORNIA'S CONTENTIONS

Briefly stated, California's argument is as follows:

Under state law, the United States had 30 days to petition the Board for reconsideration of its decision, including the conditions imposed on the United States therein. By not availing itself of this option, D 1422 became final 30 days after its issuance. At that point, the United States had 30 days in which to petition for a Writ of Mandamus pursuant to Section 1360 of the Water Code in the appropriate Superior Court of the State of California. Having allowed that time period to pass, D 1422 is now final and binding upon the United States in the instant suit. California reached this point by contending that since § 8 of the Reclamation Act of 1902 requires the United States to comply with state laws relating to the control, use, appropriation or distribution of water used for irrigation in all respects, that the only recourse for judicial review open to the United States was in the State court action as indicated by Water Code § 1360.

Having thus posited the foregoing major and minor premises of the syllogism, California urges the following conclusions on the court:

1. That the United States is barred by the doctrine of res judicata from challenging either the appropriations granted under D 1422, or any of the conditions contained therein.

2. That the doctrine of collateral estoppel bars the United States from challenging any of the actual findings of the Board to the effect that the United States has failed

---

3. *United States v. California*, 403 F.Supp. 874 (E.D.Cal.1975).

4. *United States v. California*, 558 F.2d 1347 (9th Cir. 1977).

to show the proposed water uses are reasonable and beneficial under federal and state law.

3. If neither of the foregoing arguments is sufficient to entitle the State to the judgment in this court, that the court, on review of the administrative record, must uphold the factual findings of the Board because they are supported by substantial evidence.

At the threshold of this decision we must examine and decide:

1. Whether the United States could properly exercise the choice of judicial forum; and

2. The choice of law to be applied in whatever forum the United States chose to bring its action.

As stated in Wright, Miller and Cooper, *Federal Practice and Procedure*, § 3651:

"No subject matter jurisdiction difficulties are presented when the United States is the plaintiff in an action in the federal courts. Judicial power is provided by Article III, Section 2 of the Constitution which specifically defines the judicial power of the United States as extending "to Controversies to which the United States shall be a Party." Furthermore, Section 1345 of Title 28, provides that the district courts shall have jurisdiction, except as otherwise provided in 'all civil actions, suits or proceedings commenced by the United States, or by any agency or officer thereof expressly authorized to sue by Act of Congress.' This statute also has been interpreted as applying to third-party claims by the United States under Rule 14. Finally, Section 1346(b) of Title 28 gives the district courts jurisdiction over any setoff, counterclaim, or other claim interposed by the United States against any plaintiff in cases in which the government is a defendant. There is no statutory amount in controversy requirement that must be satisfied when the United States is the claimant.

"Although other special jurisdictional provisions also may give the district court jurisdiction over some cases brought by the United States, the government need not have specific statutory authorization for a particular action inasmuch as general jurisdiction is conferred by Section 1345. Indeed, it has been held that the original jurisdiction of the Supreme Court over controversies between the United States and a state is not exclusive, so that a district court may take jurisdiction in a case of that character under Section 1345.

"The subject matter jurisdiction of the district courts over actions brought by the United States generally is concurrent with that of the state courts...."

The decision of the Southern District of Idaho in *Northside Canal Co., Ltd. v. Twin Falls Canal Co., et al.*, 12 F.2d 311 (D.C.Idaho, 1926), deserves passing notice.

Plaintiff lodged a bill in equity against the defendant noted above and others, including the Secretary of the Interior, in the State courts of Idaho. The Secretary removed the suit to the United States District Court, and plaintiff sought an order remanding the case to State court.

After determining that the United States was the real party in interest, the District Court refused to remand, stating, at page 313:

"If it be conceded that this section is applicable to a river such as the Snake, yet the word 'control', in this section, is associated with the words 'appropriation,' 'use,' and 'distribution,' and takes its meaning from its association with them. The use of the word 'control,' in the section, does not warrant the inference that Congress thereby intended to relegate a suit against the United States, or its Secretary of the Interior, where the right, title, and interest of the United States was at stake, to a state court for determination, and deny the United States or its Secretary the right of removal."

It appears to the court that the reasoning of the District Court is sound and applicable to the instant case.

■ Both the constitutional amendment and the jurisdictional sections mentioned in

the above quotation were firmly in place at the time § 8 of the Reclamation Act of 1902 was enacted. California cites no authority nor quotations from legislative intent which would indicate to the court that Congress, in enacting the Reclamation Act of 1902, intended to curtail, by implication, the jurisdiction of federal courts to entertain suits in which the United States is a plaintiff concerning its activities in the reclamation field.

Finally, the court believes that the case of *Colorado River Water Conservation District v. United States*, 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 484 (1976), is determinative of that issue.

After passage of the McCarran Amendment, 43 U.S.C. § 666, which consented to the United States being named as a defendant in state court cases involving the adjudication of the rights to use of water of a river system or other source or for the administration of such rights wherein it appears that the United States is an owner of water rights, the following events occurred:

1. The United States, as trustee for certain Indian Tribes and as an owner of various non-Indian government water right claims, brought an action in the United States District Court for the District of Colorado, to obtain a determination of its water rights in certain waters and tributaries located in Colorado Water Division No. 7.

2. Thereafter, one of the defendants in the Federal action filed a state court action naming the United States as a defendant and sought an order directing that process be served on the United States making them a party to the state court action.

3. Several of the parties in the federal court action then moved the Federal District Court to dismiss on the grounds that the McCarran Amendment had stripped the District Court of its jurisdiction to adjudicate the water rights in question.

Without addressing itself to the question of the jurisdiction of the District Court, the Federal District Court dismissed the action ruling that the doctrine of abstention required deference to the State court proceedings. The Tenth Circuit reversed. (See *U. S. v. Akin*, 504 F.2d 115.) The Supreme Court reversed, and reinstated the District Court's decision.

In reversing the Circuit Court of Appeals, however, the Supreme Court took specific pains to examine the question of the jurisdiction of the District Court to hear the case. After fully considering the matter, Justice Brennan, speaking for six members of the court, concluded as follows:

"In view of the McCarran Amendment's language and legislative history, controlling principles of statutory construction require the conclusion that the Amendment did not constitute an exception 'provided by Act of Congress' that repealed the jurisdiction of district courts under § 1345 to entertain federal water suits. 'When there are statutes clearly defining the jurisdiction of the courts the force and effect of such provisions should not be disturbed by a mere implication flowing from subsequent legislation.' *Rosencrans v. United States*, 165 U.S. 257, 262, 17 S.Ct. 302 [304], 41 L.Ed. 708 (1897). See *Morton v. Mancari*, 417 U.S. 535, 549–551, 94 S.Ct. 2474 [2482–2483], 41 L.Ed.2d 290 (1974); *United States v. Jackson*, 302 U.S. 628, 632, 58 S.Ct. 390 [392], 82 L.Ed. 488 (1938). 'In the absence of some affirmative showing of an intention to repeal, the only permissible justification for a repeal by implication is when the earlier and later statutes are irreconcilable.' *Morton v. Mancari, supra* [417 U.S.] at 550, 94 S.Ct. 2474 [at 2482], 41 L.Ed.2d 290. Not only do the terms and legislative history of the McCarran Amendment not indicate an intent to repeal § 1345, but also there is no irreconcilability in the operation of both statutes. The immediate effect of the Amendment is to give consent to jurisdiction in the state courts concurrent with jurisdiction in the federal courts over controversies involving federal rights to use of water. There is no irreconcilability in the existence of concurrent state and federal jurisdiction. Such concurrency has, for ex-

ample, long existed under federal diversity jurisdiction. Accordingly, we hold that the McCarran Amendment in no way diminished federal district court jurisdiction under § 1345 and that the District Court had jurisdiction to hear this case.[15] (424 U.S. at 808–09, 96 S.Ct. at 1241–42, 47 L.Ed.2d at 492–3)

n. 15[7b] The District Court also would have had jurisdiction of this suit under the general federal-question jurisdiction of 28 U.S.C. § 1331 [28 U.S.C.S. § 1331]. For the same reasons, the McCarran Amendment did not affect jurisdiction under § 1331 either.

This holding was cited with approval in *Cappaert v. United States*, 426 U.S. 128, 96 S.Ct. 2062, 48 L.Ed.2d 523 (1976).

Thus, while both Congress and the courts have consistently recognized the "sharing" of jurisdiction by state and federal courts, the court was furnished with no authority, nor could find any by its own research, that compels the conclusion that Congress divested the federal courts of their share of this jurisdiction.

The choice of law question presents a more difficult problem.

The broad reach of the language employed by Justice Rehnquist in the forepart of the majority decision in *United States v. California, supra*, would tend to compel the conclusion that State procedural laws, as well as State substantive laws are mandated upon Federal Courts by the terms of § 8 of the Reclamation Act of 1902 (43 U.S.C. § 383). Yet the preciseness of the majority opinion directions on remand dictate a closer examination of the question of which law should be applied by the court.

To the court's knowledge, no decision has squarely faced the problem in the prior reported reclamation cases. *Santa Margarita Mutual Water Company v. State Water Rights Board of the State of California*, 165 F.Supp. 870 (S.D.Cal.1958), is of some help, but since the District Court remanded the case to state court sua sponte, much of its discussion on this point becomes dicta.[5] We then turn to cases in other fields for guidance.

It is generally conceded by writers in this field that *Clearfield Trust Co. v. United States*, 318 U.S. 363, 63 S.Ct. 573, 87 L.Ed. 838 (1943), is the seminal decision on this point. Speaking for a unanimous court, Justice Douglas stated the controlling considerations as follows:

"In our choice of the applicable federal rule we have occasionally selected state law. See *Royal Indem. Co. v. United States*, 313 U.S. 289, 61 S.Ct. 995, 85 L.Ed. 1361, supra. But reasons which may make state law at time the appropriate federal rule are singularly inappropriate here. The issuance of commercial paper by the United States is on a vast scale and transactions in that paper from issuance to payment will commonly occur in several states. The application of state law, even without the conflict of law rules of the forum, would subject the rights and duties of the United States to exceptional uncertainty. It would lead to great diversity in results by making identical transactions subject to the vagaries of the laws of the several states. The desirability of a uniform rule is plain."

For years, the Supreme Court has held that where controversies were brought involving the apportionment of waters of an interstate stream, common law principles

---

**5.** In essence, the court held that the issue presented by the pleadings in *Santa Margarita* was the *validity* of the action of the California Water Rights Board (the predecessor administrative agency which was replaced by the agency here involved, i. e., the Water Resources Board of the State of California) in granting certain applications for appropriation of water from a river running through a military reservation of the United States. The Fallbrook Public Utility District was one of the successful appropriator applicants, and Santa Margarita's application was rejected by the State Board. The ensuing litigation raised such congressional concern that subsection (d), of Section 208, C. 651 Title II, 66 Stat. 560, contained a limitation on the use of any appropriation in the act "to prepare or prosecute the suit in the United States District Court for the Southern District of California by the United States against the Fallbrook Public Utility Corporation."

applied, rather than state law. (See *Kansas v. Colorado*, 206 U.S. 46, 95, 27 S.Ct. 655, 666, 51 L.Ed. 956 (1907); *New Jersey v. New York*, 283 U.S. 336, 51 S.Ct. 478, 75 L.Ed. 1104 (1931); *Hinderliter v. La Plata River and Cherry Creek Ditch Co.*, 304 U.S. 92, 58 S.Ct. 803, 82 L.Ed. 1202 (1938).

The reasoning of these cases indicates that the rights and liabilities of the United States, and the citizens of the various states directly affected thereby cannot be permitted to vary with the laws of the several states where there are important federal policies involved.

Such a policy is involved here. Justice Holmes said it best:

"A river is more than an amenity, it is a treasure. It offers a necessity of life that must be rationed among those who have power over it." *New Jersey v. New York, supra*, 283 U.S. at 342, 51 S.Ct. at 479.[6]

■ We reject the contention of California that by electing to be bound by substantive rules of water law of the various states in the acquisition of appropriator's rights, the United States must subject itself to the differing, and often conflicting, procedural rules of the states and is foreclosed from examining the propriety of state action in federal courts. Section 8 of the Reclamation Act does not compel such a result.

■ In eminent domain cases, where riparian rights, or other property ownership arising from riparian rights, have been taken by the United States, federal law, rather than state law, is applied to determine the value of the property taken. (*United States ex rel. T.V.A. v. Powelson*, 319 U.S. 266, 63 S.Ct. 1047, 87 L.Ed. 1390 (1943).

In this regard, a further facet should be noted as to the present status of this litigation. Since, as argued by California, the Board's decision, D 1422, giving the United States certain rights to appropriate water

from the Stanislaus River has become final under state law, to that extent, the United States possesses appropriator's rights to water in that river. The only issue now left to the decision of this court is whether or not the conditions imposed by D 1422 as to the impoundment and use of that water is consistent with the expressed intent of Congress. The court has not been furnished by counsel any authority (though such was specifically requested) that indicates that state law should be held to foreclose such inquiry.

### III

### RES JUDICATA

■ The doctrine of res judicata most simply stated, prohibits repetitious suits involving the same parties or their privies and concerning the same cause of action. [See *Commissioner v. Sunnen*, 333 U.S. 591, 68 S.Ct. 715, 92 L.Ed. 898 (1947).]

■ As we have demonstrated, the issues remaining in this case have not been finally adjudicated, and are properly before this court for determination. Hence on that ground alone, California's claim of res judicata must fail.

Even despite the foregoing, there are other cogent reasons why the doctrine of res judicata is not available to the Defendant in support of his motion for summary judgment. The Board rendered D 1422 as an administrative agency. Its sole function is to engage in factfinding within the parameters of authority outlined in the appropriate sections of the California Water Code. As was stated in *United States v. Utah Construction and Mining Co.*, 384 U.S. 394, 86 S.Ct. 1545, 16 L.Ed.2d 642 (1966):

"Occasionally courts have used language to the effect that res judicata principles do not apply to administrative proceedings, but such language is certainly too broad. When an administrative

---

**6.** Occasionally it helps to recall how disputations such as this arise. Although not material to this decision, it should be noted that the United States became embroiled in this controversy because California found that the completion of the Central Valley Project, of which New Melones Dam is a part, was beyond its economic capacity, and hence would have remained incomplete but for the agreement by Congress to take over the construction of this and other components of the project.

agency is acting in a judicial capacity and resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate, the courts have not hesitated to apply res judicata to enforce repose. *Sunshine Coal Co. v. Adkins*, 310 U.S. 381, 60 S.Ct. 907, 84 L.Ed. 1263; *Hanover Bank v. United States*, 152 Ct.Cl. 391, 285 F.2d 455; *Fairmont Aluminum Co. v. Commissioner*, 222 F.2d 622; *Seatrain Lines, Inc. v. Pennsylvania R. Co.*, 207 F.2d 255. See also *Goldstein v. Doft*, 236 F.Supp. 730, aff'd [383 U.S. 960] 86 S.Ct. 1226 [16 L.Ed.2d 302] where collateral estoppel was applied to prevent relitigation of factual disputes resolved by an arbitrator.

■ There is no indication that the Board ever considered whether or not acts of Congress constituted a limitation on the exercise of their administrative function, nor does a review of the California legislative materials pertaining to the creation of the Board indicate that the California legislature intended that the Board was empowered to decide issues of law of the nature presented by the complaint of the United States.

## IV

### COLLATERAL ESTOPPEL

The classic distinction between res judicata and collateral estoppel is well stated in *Irving National Bank v. Law*, 10 F.2d 721 (2nd Cir. 1926), at 724:

"A judgment may be a merger or bar, or it may be an estoppel. For the first, the cause of action must be the same; for the second, they may be as different as possible. On the other hand, the merger or bar extends, not only to all matters pleaded, but to all that might have been, while the estoppel extends only to facts decided and necessary to the decision. All this is very old law. *Cromwell v. County of Sac.*, 94 U.S. 351, 24 L.Ed. 195; *So. Pac. Ry. v. U. S.*, 168 U.S. 1, 18 S.Ct. 18, 42 L.Ed. 355; *United Shoe Machinery Corp. v. U. S.*, 258 U.S. 451, 42 S.Ct. 363, 66 L.Ed. 708; *Myers v. International Trust Co.*, 263 U.S. 64, 44 S.Ct. 86, 68 L.Ed. 165; *U. S. v. Moser*, 266 U.S. 236, 45 S.Ct. 66, 69 L.Ed. 262."

The same considerations enumerated with regard to res judicata are equally applicable here—with even more force.

Tested against the classical language employed by Judge Hand, supra, D 1422 is totally void as to any determination or finding by the Board of its power to act vis-a-vis the will of Congress in regard to the establishment and operation of this project.

## V

### THE COURT MUST UPHOLD D 1422 IF REVIEW SHOWS IT SUPPORTED BY "SUBSTANTIAL EVIDENCE" TEST

■ California apparently raises this issue as "insurance" should the court be inclined to treat this motion as simply a request to engage in a review of administrative action.

The thrust of the Plaintiff's complaint does not request the court to engage in the normal and usual review of an administrative decision, nor has the court been able to find anything in the Plaintiffs' moving papers wherein they request this court to engage in the traditional judicial review of an administrative action. To the contrary, as stated in the United States Memorandum of Points and Authorities in Opposition to Defendants' Motion for Summary Judgment and Judgment on the Pleadings filed on November 13, 1978:

"In the Board proceeding which resulted in Decision 1422 the question faced was whether the United States' proposed water uses were reasonable and beneficial under California law. *The determination of that issue is not being relitigated here. The Board's determination of the facts and its application of State law to them are settled.* The issue raised by the United States here is a simple one, and a different one: Are the conditions placed on the permit granted to the United States by the Board consistent with the congressional directives pertaining to the New Melones project?" (emphasis added)

The court agrees with this statement. To state the matter quite another way, the United States has its water; the issue now is how can they use it?

The court submits that that is a question of law. Since congressional intent is being determined, the court must engage in a limited amount of factfinding to determine what was, in fact, the congressional intent as it applies to the New Melones project.

## CONCLUSION AND ORDER

Defendants' Motions for Summary Judgment and Judgment on the Pleadings are denied.