529 F.Supp. 303 (1981)
UNITED STATES of America, Plaintiff,
v.
STATE OF CALIFORNIA, Defendant.
Civ. No. S-81-180 RAR.
United States District Court, E. D. California.
December 22, 1981.
As Amended January 4, 1982.
*304 Francis M. Goldsberry, II, First Asst. U. S. Atty., Chief, Civ. Div., Sacramento, Cal., for plaintiff.
Victor Gleason, Deputy Gen. Counsel, The Metropolitan Water Dist. of Southern Cal., Los Angeles, Cal., Clifford Schulz, Kronick, Moskovitz, Tiedemann & Girard, Sacramento, Cal., Kenneth A. Kuney, Berryhill, Kuney & Burckhardt, Tulare, Cal., John A. Wilson, Wilson & Hoslett, Thomas M. Zuckerman, Zuckerman & Hartmann, Stockton, Cal., Cressey H. Nakagawa, Gordon E. Davis, William H. Booth, Brobeck, Phleger & Harrison, W. Reece Bader, Orrick, Herrington, Rowley & Sutcliffe, San Francisco, Cal., Russell Kletzing, Asst. Chief Counsel, Marcia J. Steinberg, Staff Counsel, Cal. Dept. of Water Resources, Sacramento, Cal., Gregory K. Wilkinson, Deputy Atty. Gen., San Francisco, Cal., Frederick Bold, Jr., Bold & Polisnor, Walnut Creek, Cal., Stuart L. Somach, Atty., U.S. Dept. of Interior, Sacramento, Cal., for defendants.

MEMORANDUM AND ORDER
RAMIREZ, District Judge.
The plaintiff, United States of America, commenced this action for declaratory relief, seeking an adjudication that the regulations imposed by the State of California, acting through the State Water Resources Control Board, on the operation of the Central Valley Project were inconsistent with the Congressional authorizing statute and thus unenforceable. The State of California has moved to dismiss. For reasons stated fully, infra, the motion of the State of California to dismiss is granted.
The United States, acting through the Water and Power Resources Service, owns and operates the Central Valley Project (hereinafter the CVP), whereby water is diverted from the Sacramento and San Joaquin River Basins and transported to agricultural lands in southern San Joaquin Valley.[1] *305 The United States appropriates the waters of the Sacramento and San Joaquin River Basins pursuant to permits issued by the State Water Resources Control Board. The CVP, along with the State Water Project (hereinafter the SWP),[2] is the major consumer of the water resources of the Sacramento-San Joaquin Delta.[3]
The State Water Resources Control Board is that agency of the State of California designated by the Legislature to exercise the adjudicatory and regulatory functions of the State in the field of water resources, Cal.Water Code § 174. Accordingly, it is the State Water Resources Control Board that acts upon applications to appropriate the water resources of the State, Cal.Water Code §§ 179, 1250. Additionally, it is the State Water Resources Control Board which is vested with the authority to impose terms and conditions on a permit to appropriate water, Cal.Water Code § 1253.
When the State Water Resources Control Board originally issued the permits which authorize the United States to appropriate the waters of the Sacramento and San Joaquin Rivers, it reserved jurisdiction to thereafter impose terms and conditions on said permits. Eventually, the Board noticed a proceeding to determine what terms and conditions, if any, it would impose on both the CVP and the SWP in order to protect the water quality of the Sacramento-San Joaquin Delta. The administrative proceedings were protracted and complicated. The United States appeared and participated in a limited way.[4] In addition to the United States, other participants in the Delta Hearings included the California Department of Water Resources,[5] local water agencies which contract with the CVP and the SWP for the delivery of water, and several Delta interests.
Upon completion of the evidentiary hearings and after the receipt of comment on the Draft Delta Water Quality Control Plan and the Draft Environmental Impact Report, the State Water Resources Control Board issued the Final Delta Water Quality Control Plan and the Final Environmental *306 Impact Report. The Board also issued Decision 1485, which implements the Final Delta Water Quality Control Plan.
Decision 1485, along with the PLAN and the EIR, attempts to balance the competing demands on the water resources of the Delta by (1) setting certain water quality control standards, (2) requiring the permittees to monitor the water quality in the Delta, and (3) requiring the permittees to reduce the amount of water diverted from the Delta whenever the water quality fell below the set standard.
The issuance of Decision 1485 resulted in a flood of litigation in the state courts. All factions, e.g., both the Delta interests and the southern San Joaquin Valley agricultural interests, were dissatisfied with the Decision, and fourteen different parties, including the United States, filed fourteen petitions for writs of mandate in the state courts pursuant to California Code of Civil Procedure § 1094.5. These fourteen actions are pending in the state courts and have been consolidated pursuant to the California Rules of Court.
Three years after the issuance of Decision 1485 and three years after its filing of the state court action challenging that decision, the United States filed the instant action likewise challenging the decision.

I

MAY THE UNITED STATES COMMENCE A DECLARATORY RELIEF ACTION IN FEDERAL COURT NOTWITHSTANDING THE EXISTENCE OF A STATE COURT ACTION IN WHICH PRECISELY THE SAME ISSUES HAVE BEEN RAISED?
The first ground upon which the State of California has moved to dismiss is its contention that the United States is engaged in forum-shopping, and as such, is not entitled to relief pursuant to the provisions of the Declaratory Relief Act.
While the parties are agreed that the federal district court may dismiss an action for declaratory relief if the grant of declaratory relief would not be "appropriate," Geni-Chlor International, Inc. v. Multisonics Development Corp., 580 F.2d 981 (9th Cir. 1978), the parties differ as to whether the exercise of jurisdiction in the present case would indeed be "appropriate".
The State of California points out that the issues raised by the United States in its federal action are word-for-word identical to the issues raised by the United States in its petition for a writ of mandate. In this regard, the State of California relies on three Ninth Circuit cases standing for the proposition that district courts should refuse declaratory relief when there is pending in the state court comparable litigation between the parties, Geni-Chlor International, Inc. v. Multisonics Development Corp., supra, Shell Oil Co. v. Frusetta, 290 F.2d 689 (9th Cir. 1961), and H. J. Heinz v. Owens, 189 F.2d 505 (9th Cir. 1951).
The United States responds by seeking to limit the Ninth Circuit cases cited by the State of California to their facts, and citing considerable authority for the proposition that the "mere" pendency of a state court action, even where the parties are identical, does not preclude an action for declaratory relief in federal district court. Western Casualty and Surety Co. v. Teel, 391 F.2d 764 (10th Cir. 1968), Maryland Casualty Co. v. Faulkner, 126 F.2d 175 (6th Cir. 1942), Chicago Metallic Mfg. Co. v. Edward Katzinger Co., 123 F.2d 518 (7th Cir. 1941), Aetna Casualty and Surety Co. v. Hartridge, 282 F.Supp. 604 (D.C.Ark.1968), Tyrill v. Alcoa S.S. Co., 172 F.Supp. 363 (S.D. N.Y.1958), Pacific Fire Ins. Co. v. Reiner, 45 F.Supp. 703 (E.D.La.1942); see Peabody Coal Co. v. Erwin, 453 F.2d 398 (6th Cir. 1971), Johnston v. Atlas Mineral Prod. Co., 140 F.2d 282 (6th Cir. 1944), Maryland Casualty Co. v. Consumers Finance Service, 101 F.2d 514 (3rd Cir. 1938); cf. Carpenter v. Edmonson, 92 F.2d 895 (5th Cir. 1937).[6] In *307 addition thereto, the United States vigorously contends that the point upon which the issue turns is whether the state court action will settle the dispute between the parties raised by the declaratory relief action.
The issue which the United States wants settled by this declaratory relief action is whether the terms and conditions imposed on the CVP permit by Decision 1485 are consistent with Congressional authorization of the CVP. The United States Supreme Court, in California v. United States, 438 U.S. 645, 98 S.Ct. 2985, 57 L.Ed.2d 1018 (1978), held that the State Water Resources Control Board did in fact have the authority to impose terms and conditions on the use and distribution of water appropriated pursuant to a permit issued to the United States, so long as the terms and conditions were not inconsistent with Congressional directives. Naturally, the United States now concedes that the State Water Resources Control Board may impose some terms and conditions on its use and distribution of Delta waters. The challenge that the United States makes to Decision 1485 is that the particular terms and conditions are inconsistent with Congressional directives.
The United States concedes, as it must, that this precise issue is raised in its petition for a writ of mandate. In the present litigation, however, the United States takes the position that the Superior Court does not have jurisdiction to adjudicate the issue, and that therefore this issue will not be resolved by the state court action.[7]
The argument of the United States with respect to the jurisdiction of the Superior Court is as follows: The Superior Court's jurisdiction is described and limited by California Code of Civil Procedure § 1094.5 which provides that the Superior Court may disturb the decision of an administrative agency only if (1) the agency lacked jurisdiction or acted in excess of its jurisdiction, (2) the agency denied the petitioner a fair hearing, or (3) the agency abused its discretion. The United States points out that the consistency of the terms and conditions of Decision 1485 with Congressional mandate was not a part of the administrative proceeding,[8] and as such, that aspect of the administrative decision cannot be reviewed in the Superior Court.
The argument of the United States with respect to the jurisdiction of the Superior Court must be rejected. The Superior Court may review the decision of the administrative agency to determine if it exceeds the agency's jurisdiction. A decision which imposed terms and conditions on the CVP which were inconsistent with Congressional directives would, of course, be in excess of the agency's jurisdiction and therefore reviewable in the Superior Court. Of course state courts are no less bound to apply federal law than are the federal courts.
Having rejected the argument of the United States that the issue it seeks to have resolved in the declaratory relief action cannot be resolved in the pending state court action, the Court must conclude that the cases cited by United States are inapposite.
The United States alternatively suggests that this Court, in the exercise of its discretion, ought to permit the maintenance of the declaratory relief action. The considerations upon which the United States relies are: (1) the Superior Court may not be able to decide the consistency issue without further fact-finding by the State Water Resources Control Board and that would take too long, and (2) the state court actions raise a host of issues in addition to the consistency issue and thus it might be overlooked and unresolved.
*308 The alternative argument of the United States must also be rejected. While it is true that each of the Ninth Circuit cases cited by the State of California involved a unique factual situation, the tenor of those decisions is unmistakable: so long as the parties can get appropriate relief in the state court, the federal district court should decline to exercise its jurisdiction where to do so would cause significant interference in the state court proceedings. A perusal of the record establishes that the detachment of the consistency issue from the balance of the issues raised by the many petitions for writs of mandate would severely disrupt the state court proceedings and throw the entire Delta water quality litigation into confusion and chaos.[9]
The relief sought by the United States in the instant action is also sought by the United States in the pending state court action. The United States has not demonstrated the inability of the state court to give it whatever relief to which it may ultimately be entitled. This Court will not hold open its doors for those wishing to use the Court for purposes of disruption and/or delay. These were not the purposes for which the Declaratory Judgment Act was enacted, and these are not the purposes for which the Court will permit the Declaratory Judgment Act to be used. Accordingly, this Court concludes that the State of California's motion to dismiss must be GRANTED.

II

DOES THE DECISION OF THE UNITED STATES SUPREME COURT IN COLORADO RIVER WATER CONSERVATION DISTRICT v. UNITED STATES MANDATE A DISMISSAL OF THE PRESENT ACTION?
The second ground upon which the State of California moves for dismissal of the present action is the decision of the United States Supreme Court in Colorado River Water Conservation District v. United States, 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976).
In Colorado River, the United States commenced an action in federal district court, requesting the court to adjudicate and declare certain reserved rights[10] of the United States in waters of certain rivers and their tributaries within a particular watershed. Thereafter, certain other claimants of water rights in the same rivers and tributaries commenced an action in a Colorado state court, asking for a comprehensive adjudication of all the water rights in the rivers in issue. Upon commencement of the state court action, some of the defendants in the federal action moved to dismiss the federal action, on the grounds that the McCarren Amendment deprived the federal district court of jurisdiction. The federal district court did not reach the jurisdiction question but did dismiss the case on the ground that the abstention doctrine required *309 dismissal. The Tenth Circuit reversed the district court, finding that the district court did have jurisdiction and that abstention was inappropriate. United States v. Akin, 504 F.2d 115 (10th Cir. 1974).
The United States Supreme Court reversed the Tenth Circuit, holding (1) the district court and the state court had concurrent jurisdiction, (2) abstention was inapplicable, and (3) considerations of "wise judicial administration" required the district court to dismiss the federal action in favor of the state action. The United States Supreme Court cited the following factors as mandating dismissal of the federal court action:
 the McCarren Amendment evinces a clear federal policy to avoid piecemeal litigation of "highly interdependent" water rights in a given river;
 the litigation of the federal action had not proceeded beyond the filing of the complaint and the motion to dismiss;
 state water rights were extensively involved in the federal action (the United States named over 1000 defendants);
 the federal courthouse was 300 miles from the state courthouse, which was closer to the watershed; and
 the United States had previously and simultaneously participated in other water rights adjudications in the Colorado state courts, involving rights in other rivers.
The State of California argues that virtually all of the Colorado River factors pertain to the present case:
 the federal policy against piecemeal litigation of highly interdependent water rights will be violated by permitting the consistency issue to be litigated in federal court when all the other issues will be litigated in state court. Any effective water quality plan for the Delta must take account of the amount of water pumped from the Delta into the CVP, and thus the rights of all other interested parties (representing virtually every segment of the population of California) cannot be determined without a determination of the rights of the United States.
 there have been no proceedings in the federal action other than the filing of the complaint and the motion to dismiss, in addition to which the state court proceedings are relatively advanced.
 state water rights are necessarily extensively involved in the federal action, as it is impossible to separate the rights of the United States in Delta waters from the rights of all other claimants. Several of the other thirteen entities have indicated a desire to intervene in the federal suit in order to protect their respective interests in Delta water.
 the factor of United States participation in other state court actions is different but more compelling in the instant case, since the United States actually filed in the state court and did so three years before filing in federal court.
Since four out of the five factors identified by the Supreme Court as warranting dismissal of the federal action pertain to the instant litigation, the State of California argues that dismissal is required.
The United States attempts to distinguish Colorado River by arguing that Colorado River was a McCarren Amendment case and that that fact was sine qua non to the decision. It is the position of the United States that since neither the federal action nor the state action are McCarren Amendment cases, the Colorado River decision is irrelevant.[11]
It is this Court's opinion that the really significant consideration in Colorado River was the necessity of avoiding piecemeal and *310 possibly inconsistent adjudications. The scope of the Colorado River holding should turn, then, on whether one reads it as applying the McCarren Amendment literally, or as applying the policy of the McCarren Amendment. The opinion is couched not in terms of "the McCarren Amendment requires deferral to the state courts in general stream adjudications," but in terms of "The clear federal policy evinced by [the McCarren Amendment] is ...." "This policy is ...," "The consent to jurisdiction given by the McCarren Amendment bespeaks a policy that recognizes the availability of comprehensive state systems for adjudication of water rights as the means for achieving [the] goals [of avoiding piecemeal litigation]." Because the opinion is couched in terms of the policy that the McCarren Amendment illustrates as well as implements, the Court is unable to accept the contention of the United States that Colorado River is irrelevant to this action.
On the contrary, the Court is of the opinion that Colorado River requires the dismissal of the instant complaint. Colorado River teaches that it is the policy of the McCarren Amendment that general stream adjudications, and similar actions  actions where the State is trying to balance competing claims to its waters and the United States is just one of the claimants  be adjudicated in one forum, in a coherent fashion. This policy can only be served by the dismissal of the federal action, and the relegation of the United States to the forum it initially chose  the state court.
Accordingly, this Court again concludes that based on the decision of Colorado River, the State of California's motion to dismiss must be GRANTED.

III

DOES THE STATE STATUTE OF LIMITATIONS PRECLUDE THE MAINTENANCE OF THE PRESENT ACTION?
The State of California has moved to dismiss the present litigation on the additional ground that it was commenced long after the state statute of limitations had run. In response thereto, the government contends that the state statute of limitations has no application whatsoever to the United States as a party plaintiff.
The parties are agreed that the applicable state statute of limitations is set forth in California Water Code § 1360.[12] The parties further agree that the date of the "final action" of the State Water Resources Control Board was October 1, 1978; on that date the State Water Resources Control Board denied the petition for reconsideration of its decision. Thus, the issue presented to this Court is whether the United States is bound by the thirty-day statute of limitations to seek review of a Board decision that applies to the United States.
The State of California urges that the United States is bound by the thirty-day statute of limitations, pointing out that the statute applies to any interested person and that, by virtue of § 8 of the Reclamation Act of 1902, the United States is a permit applicant like any other permit applicant. In response, the United States relies exclusively on the opinion of my learned brother, Judge Price, in United States v. California, 521 F.Supp. 491 (E.D.Cal.1980) (hereinafter New Melones).[13]
*311 With all due respect, I cannot concur in the opinion of my brother in the New Melones decision. The question is one that turns on the decision of the United States Supreme Court in California v. United States, 438 U.S. 645, 98 S.Ct. 2985, 57 L.Ed.2d 1018 (1978), in which the court construed § 8 of the Reclamation Act of 1902 which provides in relevant part:
[N]othing in this Act shall be construed as affecting or intended to affect or to in any way interfere with the laws of any State or Territory relating to the control, appropriation, use, or distribution of water used in irrigation ... and the Secretary of the Interior, in carrying out the provisions of this Act, shall proceed in conformity with such laws ....
If the plain statutory language were not sufficient to make it clear that the United States is bound by both state procedural and substantive law, the United States Supreme Court, in California v. United States, made the following observations:
... through [the history of the relationship between the Federal Government and the States in reclamation] runs the consistent thread of purposeful and continued deference to state water law by Congress.
438 U.S. at 653, 98 S.Ct. at 2990.
[With the Acts of 1890 and 1891] as before, Congress expressly indicated that the reclamation would be controlled by state law
....
438 U.S. at 660, 98 S.Ct. at 2993.
... authority over intrastate waterways lies with the States.
438 U.S. at 662, 98 S.Ct. at 2994.
... the [Reclamation] Act [of 1902] clearly provided that state water law would control in the appropriation and later distribution of the water.
438 U.S. at 665, 98 S.Ct. at 2996.
The legislative history of the Reclamation Act of 1902 makes it abundantly clear that Congress intended to defer to the substance, as well as the form, of state water law.
438 U.S. at 675, 98 S.Ct. at 3001.
Based on the foregoing references, this Court is of the opinion that the United States Supreme Court has made itself clear in regard to its interpretation of the Reclamation Act of 1902: The Act requires federal agencies who wish to appropriate intrastate waters to abide by the laws of the State having dominion and control over those waters. Compliance with state law, the form and the substance, requires compliance with state procedural law.[14] Furthermore, any contrary result would negate the policy of promoting comprehensive and coherent resolutions of competing claims to water. See, Colorado River Water Conservation District v. United States, 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976). While this policy is not in issue in many reviews of the decisions of the State Water Resources Control Board, see, e.g., the New Melones decision, in an arid state such as *312 California, there are often competing claims for water, and a particular decision such as that challenged herein, may have a very broad impact to say the least. If all other interested parties were required to petition the Superior Court within thirty days of the final action by the Board but the United States could proceed at its leisure, an expeditious and fair resolution of questions of water entitlements would be utterly frustrated.
Section 8 of the Reclamation Act of 1902, as construed by the United States Supreme Court in California v. United States, supra, provides that when the United States wishes to appropriate the State's waters, it stands on the same footing as any citizen of the State.[15] Accordingly, the Court concludes that the United States must file its request for relief from a decision of the State Water Resources Control Board within thirty days of the Board's final action.
Based upon the foregoing views, the Court concludes that the present action was not brought in a timely manner, and, accordingly, the State of California's motion to dismiss on this ground is likewise GRANTED.

IV
For all of the reasons stated above, and each of them, the motion of the State of California to dismiss the action is GRANTED.
IT IS SO ORDERED.
NOTES
[1] Extensive descriptions of the CVP are contained in Dugan v. Rank, 372 U.S. 609, 83 S.Ct. 999, 10 L.Ed.2d 15 (1963), Ivanhoe Irrigation District v. McCracken, 357 U.S. 275, 78 S.Ct. 1174, 2 L.Ed.2d 1313 (1958), and United States v. Gerlach Live Stock Co., 339 U.S. 725, 70 S.Ct. 955, 94 L.Ed. 1231 (1950).
[2] The State Water Project, like the CVP, is an interbasin water transfer system, whereby water is transferred from water-surplus areas in the Sacramento Valley and transferred to water-deficient areas to the south and west of the Sacramento-San Joaquin Delta via the Delta, Cal.Water Code §§ 12200, 12930, et seq.
[3] The confluence of the Sacramento and San Joaquin Rivers, encompassing, in area, 738,000 acres, see Cal.Water Code § 12220.
[4] According to the United States it participated in the administrative proceedings in only a limited way because the jurisdiction of the State Water Resources Control Board to impose conditions on the United States was in doubt, Brief of the United States in Opposition to the Motion to Exclude Evidence Outside the Administrative Record, Superior Court Proceedings, pgs. 18-21. As a reason for only limited participation in the administrative proceedings, this is difficult to reconcile with the following portion of the administrative decision:

The Bureau [of Reclamation, predecessor in interest of the Water and Power Resources Service] participated in the evidentiary proceedings pursuant to a stipulation with the [State Water Resources Control] Board covering the then pending litigation in California v. United States, [438 U.S. 645, 98 S.Ct. 2985 [57 L.Ed.2d 1018] (1978)] in which both parties agreed that any condition on water right entitlements held by the Bureau, developed through the Delta hearing, shall not become effective until a final judgment of a court of competent jurisdiction has been entered recognizing such Board authority over Bureau appropriations.
In other words, no decision of the Board conditioning the government's diversion of water via the CVP would be effective until a court of competent jurisdiction held that the Board had the authority to impose conditions. Having secured this protection, how can doubts about the jurisdiction of the Board have motivated the United States to limit its participation in the administrative proceedings?
[5] The California Department of Water Resources operates the SWP, and although a unit of state government is entirely separate from the State Water Resources Control Board and has separate responsibilities and powers, Cal. Water Code §§ 120, et seq., 6000, et seq., etc.
[6] While the Court does not wish to imply any approval of the practice of using string citations, the Court deems it important to note that none of the authorities cited by the United States is Ninth Circuit authority and none is exactly the latest thinking on the subject in question.
[7] This Court must note it regards the practice of filing a complaint and then contending that the forum selected lacks jurisdiction with something less than wholehearted enthusiasm.
[8] The issue of the consistency of the terms and conditions with the Congressional authorizing legislation was not identified by the Court as the relevant inquiry until its decision in California v. United States, supra. That decision was issued in July of 1978, well after the close of the evidentiary hearings before the Board. Decision 1485 was issued in August 1978.
[9] As noted above, there are many competing claims on the waters that flow through the Delta. The residents of Southern California, for example, depend on it in part to supply their drinking water; the farmers of the Southern San Joaquin Valley depend on it in part to water their fields; the residents of the Delta depend on it to water their fields; residents of Contra Costa and Solano Counties depend on it in part to supply their drinking water; and the waters of the Delta are critical to the hydrology of the San Francisco Bay, and thus to the economic life of the San Francisco Bay Area. In short, the water rights of the United States cannot be resolved in a vacuum.
[10] Colorado, like California, uses an "appropriative rights" method to allocate its limited water resources. Under the appropriative rights method, the first individual to appropriate water and apply it to a "beneficial use" acquires rights superior to all other claimants to the water. The reserved rights of the United States are the rights to water enjoyed by the United States by virtue of the reservation of title to lands. Either expressly or impliedly, when the United States reserves lands  for National Parks, National Forests, military uses, Indian reservations, etc.  it also reserves sufficient water traversing or otherwise serving those lands to make the lands suitable for the government's uses, Arizona v. California, 373 U.S. 546, 595, 83 S.Ct. 1468, 1495, 10 L.Ed.2d 542 (1963). Such rights are superior to all appropriative or otherwise acquired rights. The rights at issue in the present case are not reserved rights, but rights acquired pursuant to state law.
[11] The McCarren Amendment applies to general stream adjudications. Dugan v. Rank, 372 U.S. 609, 83 S.Ct. 999, 10 L.Ed.2d 15 (1963). A general stream adjudication involves the disposition of all competing rights to a stream, and not a private dispute between competing water claimants, Dugan v. Rank, supra. This case is not a general stream adjudication in the classic sense, since it involves the terms and conditions to be imposed on the use of water appropriated pursuant to permit.
[12] California Water Code § 1360 provides:

Any person interested in any application [for a permit to appropriate water] may, within 30 days after final action by the board, file a petition for a writ of mandate in the superior court .... (Emphasis added)
[13] The Court is satisfied that the decision in United States v. California, 521 F.Supp. 491 (E.D.Cal.1980), does not collaterally estop the State of California from relitigating this issue, and the United States does not so contend. The issue presented by this section of the State's motion to dismiss is a pure question of law and thus within the well-recognized

... exception which obtains for `unmixed questions of law' in successive actions involving substantially unrelated claims.
Montana v. United States, 440 U.S. 147, 99 S.Ct. 970, 978, 59 L.Ed.2d 210 (1979). These successive actions between the United States and California involve substantially unrelated claims: New Melones involves the terms and conditions imposed by the State Water Resources Control Board on the appropriation permits issued in connection with the United States' operation of the New Melones Reservoir. No factual determination made in the course of the New Melones decision will have any relevance to the factual determinations to be made in the course of the Delta water quality litigation.
[14] The Court has considered the Opinion of the Solicitor of the Department of the Interior, M-36914-Supp. (Sept. 11, 1981), which concludes that, with respect to non-reserved water rights, the United States must comply with both state substantive and procedural law. This Opinion was filed after the United States commenced the instant lawsuit, and after the State of California noticed and argued its motion to dismiss. Nevertheless, it appears that the Department of the Interior, that branch of the Executive in charge of the Water and Power Resources Service, no longer adheres to the position it takes in this action.

The Court cannot ignore the fact that the Opinion of the present Solicitor was not shared by the prior Solicitor, and, in fact, the Opinion of the present Solicitor may reflect the philosophy of the present Administration as much as it reflects the absence of a meaningful dispute about the state of the law. However, the Court finds the Opinion of the present Solicitor instructive and persuasive.
[15] It appears to the Court that there are two exceptions to the general rule that the United States as appropriator has no greater rights than the local citizen as appropriator: the United States may, if it chooses, sue in federal district court, Colorado River Water Conservation District v. United States, 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976), and the United States may resist the imposition of any term and condition imposed by the State on the grounds that such term or condition is inconsistent with the Congressional enactment creating the project for which the United States wants to appropriate the water, California v. United States, supra.